**BLANK ROME LLP**
Gregory M. Bordo (SBN 156147)
GBordo@BlankRome.com
Christopher J. Petersen (SBN 251439)
CJPetersen@BlankRome.com
Craig N. Haring (SBN 314100)
CHaring@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
Telephone:    424.239.3400
Facsimile:     424.239.3434

Attorneys for Plaintiff
LIFELINE LEGACY HOLDINGS LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LIFELINE LEGACY HOLDINGS LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>     v.<br><br>OZY MEDIA, a Delaware corporation; SAMIR RAO, an individual,<br><br>            Defendants. | Case No. 5:21-cv-7751<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS, VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25401, AND FRAUD BY CONCEALMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff LifeLine Legacy Holdings LLC ("LifeLine" or "Plaintiff") hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action concerns violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 of the Securities and Exchange Commission ("SEC").

2. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to the written agreements at issue, each of which contain provisions requiring that the venue of any litigation between the parties shall be this district and pursuant to Section 27(a) of the Exchange Act and 15 U.S.C. § 78aa(a) because certain of the transactions, acts, practices and courses of conduct constituting violations of federal securities laws occurred within this district.

**SUMMARY**

4. Defendant Ozy Media is a digital media company that sought to raise funds from, among others, private investors in late 2020 and early 2021. LifeLine was one of the investors targeted by Ozy Media and, more specifically, by its Co-Founder, Director and Chief Operating Officer, Samir Rao.

5. In 2021, based upon direct assurances concerning Ozy Media's strong business performance, investments by high profile institutional investors, high viewer metrics, and competent and honest company management, LifeLine agreed to invest in Ozy Media.

6. At the time that LifeLine's investments were solicited and made, Ozy Media and, more specifically, Samir Rao knew that, in fact, the representations made to LifeLine regarding Ozy Media were untrue and that Rao had fail to disclose material information about Ozy Media to LifeLine. More particularly, Ozy Media knew, but failed to disclose to LifeLine that on February 2, 2021 the company, through Samir Rao, engaged in fraudulent, deceptive and illegal conduct when

Mr. Rao, while participating in a call with a potential high profile institutional investor, impersonated an executive of YouTube and misrepresented viewership of Ozy Media programming shown on YouTube. Ozy Media also failed to disclose that said high profile institutional investor refused to invest in Ozy Media after learning of said fraudulent conduct and that the company, as a result, was under investigation by various government agencies.

7. By this conduct, Defendants violated Section 10(b) of the Exchange Act, SEC Rule 10b-5, and California Corporations Code § 25401.

8. Had LifeLine known the foregoing facts it would never have invested in Ozy Media and LifeLine is now, therefore, entitled to rescission of its investments and/or damages all as provided under applicable law.

## THE PLAINTIFF

9. LifeLine Legacy Holdings LLC, is a Delaware limited liability company with its principal place of business located in Beverly Hills, California.

## THE DEFENDANTS

10. Ozy Media is incorporated under the laws of the state of Delaware and its offices and principal place of business are located in Mountain View, California.

11. Samir Rao ("Rao") resides in Palo Alto, California, and is a Co-Founder of Ozy Media and, at all relevant times referred to herein, served as Chief Operating Officer of Ozy Media and was a member of its Board of Directors.

## THE ALLEGATIONS

*LifeLine Acquires Series C Preferred Shares in Defendant Ozy Media*

12. Ozy Media is a media company specializing in, among other things, news, podcasts, festivals, and television/feature film productions. The company was founded in September 2013 by Carlos Watson ("Watson") and Rao.

13. In late 2020, both Watson and Rao personally solicited LifeLine, encouraging it to invest in Ozy Media. In discussions with LifeLine's principals, Watson and Rao boasted of Ozy Media's strong financial performance, seemingly impressive viewership metrics and significant

institutional investor interest. Watson and Rao expressly represented to LifeLine that Goldman Sachs was positioning itself to make a substantial investment in the company. These discussions and Ozy Media's efforts to secure LifeLine's investments continued into early 2021.

14. Based, in part, upon the foregoing representations, on or about February 24, 2021, LifeLine entered into a Series C Stock Purchase Agreement ("Series C SPA") pursuant to which it agreed to purchase approximately $2 million of Series C Preferred Shares in Ozy Media.

15. Among other things, the Series C SPA provided that "to the Company's knowledge, the Company is not in violation of any federal or state statute, rule or regulation applicable to the Company".

16. The Series C SPA further provided that in the event of a suit or action between the parties in connection with the transaction, the prevailing party therein shall recover reasonable attorneys' fees and costs incurred therein.

### *LifeLine Acquires Series D Preferred Shares in Ozy Media*

17. In or around May 2021, Ozy Media through Rao solicited further investments from LifeLine. Ozy Media and Rao represented to LifeLine that Alphabet or one of its Google affiliates was leading the Series D financing by investing approximately $30,000,000 into Ozy Media.

18. On or about May 13, 2021, LifeLine entered into Series D Stock Purchase Agreement ("Series D SPA") pursuant to which LifeLine agreed to and did purchase approximately $250,000.00 of Series D Preferred Shares in Ozy Media.

19. Among other things, the Series D SPA provided that "to the Company's knowledge, the Company is not in violation of any federal or state statute, rule or regulation applicable to the Company".

20. The Series D SPA further provided that in the event of a suit or action between the parties in connection with the transaction, the prevailing party therein shall recover reasonable attorneys' fees and costs incurred therein.

***Ozy Media's and Rao's Failure to Disclose Material Information***

21.    Representatives of Ozy Media have publicly acknowledged that at the time that LifeLine entered into the Stock Purchase Agreements, Ozy Media and Rao were fully aware that only a short time prior thereto, Defendant Rao engaged in unlawful and, more specifically, fraudulent conduct and that Goldman Sachs had discovered the impersonation and, as a result, refused to proceed with its investment in the company and that government agency investigations of the company's and Rao's actions had been initiated.

22.    Such knowledge rendered the company's representations in the Series C and Series D SPAs false and otherwise constituted material information since Ozy Media and Rao knew, or should have known, that such conduct could cause substantial, even lethal, harm to the company and the interests of its shareholders.

23.    At no time prior to LifeLine's execution of the Series C and Series D SPAs did Defendants disclose to LifeLine that Rao attempted to impersonate an executive of YouTube in an effort to obtain a substantial investment from Goldman Sachs, or that, as a result of Rao's fraudulent conduct, Goldman Sachs declined to invest in Ozy Media and that Ozy Media was under investigation by government agencies.

24.    LifeLine is informed and believes, and based thereon alleges that the company, its executives and it directors took actions to conceal these facts and to minimize the seriousness and consequences of Rao's actions, including by later providing false or misleading explanations.

25.    In fact, Rao's actions became publicly known in September, 2021 leading to the decision of the company's board of directors to, first, cease the company's operations and to wind down its affairs and, only two days later, to have Watson publicly tout Ozy Media's success and the character of its executives and announce that it would, in fact, continue to operate. In light of the short period of time between the public disclosure of Rao's fraudulent conduct and the decision to, first, wind down the affairs of the company, only later to reverse course, LifeLine suspects that additional illegal, improper or otherwise inappropriate conduct occurred at the company prior to when LifeLine made its investments and that were not disclosed to LifeLine.

**FIRST CLAIM FOR RELIEF**

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

**(Against Defendant Ozy Media)**

26. Plaintiff realleges and incorporates by reference Paragraphs 1 through 25 above as set forth here in full.

27. Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) empowered the SEC to enact rules against "manipulative and deceptive practices" in connection with the sale of securities.

28. Pursuant to Section 10(b), the SEC adopted Rule 10b-5 (17 C.F.R. § 240.10b-5) which provides, in part, that it is unlawful to make any untrue statement of a material fact or to omit to state a material fact in connection with the sale of securities or to engage in any fraud upon any person in connection with the sale of securities.

29. In taking the actions alleged hereinabove, Defendant Ozy Media violated Rule 10b-5 by failing to inform Plaintiff that the company and specifically Rao had engaged in fraudulent conduct in connection with its solicitation of investments from other investors. Moreover, Defendant Ozy Media had actual knowledge of the wrongful conduct since the fraudulent actions taken by Rao, in his capacity as a Co-Founder, Director and Chief Operating Officer of Ozy Media, were obviously known to the company at the time it, and specifically Rao, solicited Plaintiff's investments and documented same with the Series C and D SPAs.

30. Had Plaintiff been aware of such fraudulent conduct and, therefore, of the potential harm such conduct would or could cause to the company and its shareholders, Plaintiff would never have executed the Stock Purchase Agreements and would never have invested in Ozy Media.

31. 15 U.S.C. § 78cc(b) of the Exchange Act provides that all contracts entered into in violation of the Exchange Act are voidable. Based upon the actions of Defendant Ozy Media in connection with the Series C and D SPAs, Plaintiff is entitled to rescission of the agreements, the return of all sums paid by Plaintiff pursuant thereto and interest on said amounts.

# SECOND CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

### (Against Defendant Samir Rao)

32. Plaintiff realleges and incorporates by reference Paragraphs 1 through 25 above as set forth here in full.

33. Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) empowered the SEC to enact rules against "manipulative and deceptive practices" in connection with the sale of securities.

34. Pursuant to Section 10(b), the SEC adopted Rule 10b-5 (17 C.F.R. § 240.10b-5) which provides, in part, that that it is unlawful to make any untrue statement of a material fact or to omit to state a material fact in connection with the sale of securities or to engage in any fraud upon any person in connection with the sale of securities.

35. In taking the actions alleged hereinabove, Defendant Samir Rao violated Rule 10b-5 by failing to inform Plaintiff that the company and specifically Rao had engaged in fraudulent conduct in connection with its solicitation of investments from other investors. Moreover, Defendant Rao had actual knowledge of the wrongful conduct since the fraudulent actions taken by him, in his capacity as a Co-Founder, Director and Chief Operating Officer of Ozy Media, were obviously known to the company at the time it, and specifically Rao, solicited Plaintiff's investments and documented same with the Series C and D SPAs.

36. Had Plaintiff been aware of such fraudulent conduct and, therefore, of the potential harm such conduct would or could cause to the company and its shareholders, Plaintiff would never have executed the Stock Purchase Agreements and would never have invested in Ozy Media on the terms of the Stock Purchase Agreements.

37. Rao's fraudulent conduct, once disclosed resulted in damage to the value of Ozy Media and, as a result, Plaintiff has incurred damage in an amount according to proof at trial, but not less than the difference between the amount paid by Plaintiff for the shares in Ozy Media and the value of the shares following the disclosure of Rao's fraudulent conduct, plus interest thereon.

### THIRD CLAIM FOR RELIEF

### Fraud in the Sale of Securities

### Violation of California Corporations Code § 25401

### (Against Defendant Ozy Media)

38. Plaintiff realleges and incorporates by reference Paragraphs 1 through 25 above as set forth here in full.

39. California Corporations Code § 25401 provides, in pertinent part, as follows: "It is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication that includes an untrue statement of material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading."

40. In taking the actions alleged hereinabove, Defendant Ozy Media violated California Corporations Code § 25401 by failing to inform Plaintiff that the company and specifically Rao had engaged in fraudulent conduct in connection with its solicitation of investments from other investors. Moreover, Defendant Ozy Media, through Rao, had actual knowledge of the wrongful conduct since the fraudulent actions taken by him, in his capacity as a Co-Founder, Director and Chief Operating Officer of Ozy Media, were obviously known to the company at the time it, and specifically Rao, solicited Plaintiff's investments and documented same with the Series C and D SPAs.

41. Had Plaintiff been aware of such fraudulent conduct and, therefore, of the potential harm such conduct would or could cause to the company and its shareholders, Plaintiff would never have executed the Series C and D SPAs and would never have invested in Ozy Media.

42. Section 25501 of the California Corporations Code provides that all contracts entered into in violation of Section 25401 are voidable. Based upon the actions of Defendant Ozy Media in connection with the Series C and D SPAs, Plaintiff is entitled to rescission of the agreements, the return of all sums paid by Plaintiff pursuant thereto, plus interest on said amounts.

# FOURTH CLAIM FOR RELIEF

### Fraud in the Sale of Securities

### Violation of California Corporations Code § 25401

### (Against All Defendant Samir Rao)

43. Plaintiff realleges and incorporates by reference Paragraphs 1 through 25 above as set forth here in full.

44. California Corporations Code § 25401 provides, in pertinent part, as follows: "It is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication that includes an untrue statement of material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading."

45. In taking the actions alleged hereinabove, Defendant Rao violated California Corporations Code § 25401 by failing to inform Plaintiff that the company and specifically Rao had engaged in fraudulent conduct in connection with its solicitation of investments from other investors. Moreover, Defendant Rao had actual knowledge of the wrongful conduct since the fraudulent actions taken by him, in his capacity as a Co-Founder, Director and Chief Operating Officer of Ozy Media, were obviously known to the company at the time it, and specifically Rao, solicited Plaintiff's investments and documented same with the Series C and D SPAs.

46. Had Plaintiff been aware of such fraudulent conduct and, therefore, of the potential harm such conduct would or could cause to the company and its shareholders, Plaintiff would never have executed the Series C and D SPAs and would never have invested in Ozy Media.

47. Rao's fraudulent conduct, once disclosed resulted in damage to the value of Ozy Media and, as a result, Plaintiff has incurred damage in an amount according to proof at trial, but not less than the difference between the amount paid by Plaintiff for the shares in Ozy Media and the value of the shares following the disclosure of Rao's fraudulent conduct, plus interest thereon.

# FIFTH CLAIM FOR RELIEF

## Fraud by Concealment

### (Against All Defendants)

48. Plaintiff realleges and incorporates by reference Paragraphs 1 through 25 above as set forth here in full.

49. Pursuant to the Stock Repurchase Agreements, a fiduciary and confidential relationship existed between Defendants, and each of them, and Plaintiff.

50. Defendants, and each of them, intentionally failed to disclose certain facts regarding Ozy Media that were known only to Defendants, including Rao, and that could not have been discovered by Plaintiff, including concealing Rao's fraudulent conduct during the telephone call with Goldman Sachs and the actual viewership of Ozy Media programming on YouTube.

51. Defendants failed to disclose this material information to Plaintiff, during at least the following written communications by Rao to the principals of Plaintiff regarding the Series C SPA and Series D SPA:

    a. Electronic messages from Rao to Plaintiff's principals dated February 15, 16 and 17, 2021; and

    b. Electronic messages from Rao to Plaintiff's principals dated April 5, 13 and 29, 2021.

52. At no time during the above-referenced communications with Plaintiff did Defendants, or any of them, disclose Rao's fraudulent conduct, Goldman Sachs' refusal to invest in Ozy Media because of Rao's misconduct, or that governmental agencies were investigating Ozy Media as a result of Rao's misconduct. Plaintiff was unaware of these concealed facts prior to executing the SPAs.

53. Defendants, and each of them, intended to deceive Plaintiff by concealing these facts.

54. Had the concealed facts been disclosed to Plaintiff prior to execution of the SPAs, Plaintiff would not have executed the SPAs.

55. Plaintiff was harmed as a result of the failure of Defendants, and each of them, to disclose the concealed facts.

56. The conduct of Defendants, and each of them, in concealing these facts was a substantial factor in causing the harm to Plaintiff.

57. As a result, Plaintiff has been damaged in an amount to be proven at trial.

58. Defendants, and each of them, failed to disclose the concealed facts as alleged herein because they were aware of the probable consequences of their conduct (i.e., that Plaintiff would not have executed the Stock Purchase Agreements) and, nonetheless, intentionally concealed the facts from Plaintiff in order to obtain Plaintiff's investments in Ozy Media. Defendants, and each of them, engaged in the above alleged conduct with malice, oppression, and fraud, such that the imposition of punitive damages is warranted.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A. Ordering the Series C SPA and the Series D SPA rescinded and requiring Defendant Ozy Media to repay to Plaintiff all sums paid by it pursuant to said agreements plus interest as provided by law;

B. Ordering Defendant Rao to pay to Plaintiff all damages sustained by Plaintiff by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff punitive damages against Defendants, and each of them, based on the fraudulent concealment as alleged herein;

D. Awarding Plaintiff pre-judgment, reasonable attorneys' fees, expert fees and court costs; and,

E. Awarding Plaintiff such other and further relief as this Court my deem just and proper.

DATED: October 4, 2021

BLANK ROME LLP


By: _____
    Gregory M. Bordo
    Christopher J. Petersen
    Craig N. Haring
Attorneys for Plaintiff
LIFELINE LEGACY HOLDINGS LLC

**COMPLAINT**

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

DATED: October 4, 2021        BLANK ROME LLP

By: _____
    Gregory M. Bordo
    Christopher J. Petersen

Attorneys for Plaintiff
LIFELINE LEGACY HOLDINGS LLC