KEVIN J. O'BRIEN (NY Bar 1673847)
kobrien@fordobrien.com
(*pro hac vice forthcoming*)
ALEXANDER SHAPIRO (NY Bar 2466225)
ashapiro@fordobrien.com
(*pro hac vice forthcoming*)
STEPHEN R. HALPIN III (DC Bar 1048974)
shalpin@fordobrien.com
(*pro hac vice forthcoming*)
FORD O'BRIEN LLP
575 5th Ave, 17th Floor
New York, NY 10017
Telephone:     212-858-0040
Facsimile:     212-256-1047

WILLIAM J. EDELMAN (SBN 285177)
wedelman@delawllp.com
PATRICK R. DELAHUNTY (SBN 257439)
pdelahunty@delawllp.com
DELAHUNTY & EDELMAN LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:     415-891-6210
Facsimile:     415-891-6256
Attorneys for Defendant
OZY Media, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFELINE LEGACY HOLDINGS LLC, a Delaware limited liability company, | Case No: 21-cv-07751-BLF |
| Plaintiff, | **DEFENDANT OZY MEDIA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| OZY MEDIA, INC., a Delaware corporation; SAMIR RAO, an individual; CARLOS WATSON, an individual, | |
| Defendants. | Hon. Beth Labson Freeman |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 5, 2022, at 9:00 AM, in Courtroom 3, 5th Floor of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California, Defendant OZY Media, Inc., will and hereby does move for an order dismissing Plaintiff's First Amended Complaint ("FAC") [ECF No. 18] on the ground that it fails to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, Pub. L. 104–67, 109 Stat. 737.  This motion is based on the Memorandum of Points and Authorities, the Declaration of William J. Edelman and attached exhibits, the Request for Judicial Notice in Support of the Motion to Dismiss the First Amended Complaint, and all other matters properly before the Court.

Defendant seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice Plaintiff's claims for failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES

Whether the FAC fails to state a claim under (i) Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, (ii) California Corporations Code § 25401, and (iii) California common law.

Dated: January 7, 2022

Respectfully submitted,

DELAHUNTY & EDELMAN LLP


_____*/s/ William J. Edelman*_____
WILLIAM J. EDELMAN, SBN 285177
wedelman@delawllp.com
PATRICK R. DELAHUNTY, SBN 257439
pdelahunty@delawllp.com

*Attorneys for Defendant OZY Media, Inc.*

1

## TABLE OF CONTENTS

2  TABLE OF CONTENTS .................................................................................................. iii

3  TABLE OF AUTHORITIES ........................................................................................... iv

4  INTRODUCTION ............................................................................................................ 1

5  BACKGROUND ............................................................................................................... 2

6  ARGUMENT ..................................................................................................................... 4

7  I.      LEGAL STANDARD FOR A MOTION TO DISMISS. ...................................... 4

8  II.     THE FAC FAILS TO STATE A CLAIM FOR FEDERAL SECURITIES FRAUD
9          (FIRST, SECOND, AND THIRD CLAIMS). ....................................................... 4

10         A.  Legal Standard for a Section 10(b) Securities Claim. ............................... 4

11         B.  The FAC Does Not Allege Any Actionable Omission with Particularity. ......... 6

12             1.  *OZY Owed LifeLine No Affirmative Duty to Disclose*
13                 *the Alleged Omission.* ................................................................... 6

14             2.  *No Material Statement Was Rendered False or Misleading by*
                   *the Alleged Omission.* ................................................................... 8

15         C.  The FAC Fails to Allege Scienter with Particularity. ............................. 15

16
17         D.  The FAC Fails to Allege Reliance upon the Alleged Omission
               with Particularity ............................................................................................ 19

18
19         E.  The FAC Fails to Allege Economic Loss and Loss Causation
               with Particularity ............................................................................................ 21

20  III.    THE FAC'S FAILURE TO STATE A CLAIM FOR FEDERAL SECURITIES
           FRAUD DOOMS ITS CLAIMS FOR FRAUD UNDER CALIFORNIA STATE
21         LAW (FOURTH, FIFTH, SIXTH, AND SEVENTH CLAIMS). ..................... 22

22  CONCLUSION ............................................................................................................... 23

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Ambassador Hotel Co. v. Wei–Chuan Inv.*,
    189 F.3d 1017 (9th Cir. 1999)................................................................21

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................13, 20

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ........................................................................6

*Brody v. Transitional Hospitals Corp.*,
    280 F.3d 997 (9th Cir. 2002)..........................................................14

*Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.*,
    758 F. Supp. 908 (S.D.N.Y. 1991) .................................................10

*City of Roseville Emp. Ret. Sys. v. Sterling Fin. Corp.*,
    691 F. App'x 393 (9th Cir. 2017) (unpublished) .......................17

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) (per curiam) ...................6, 19, 21

*Dover Ltd. v. A.B. Watley, Inc.*,
    423 F. Supp. 2d 303 (S.D.N.Y. 2006).............................................10

*Donovan v. Flamingo Palms Villas, LLC*,
    No. 208CV01675RCJRJJ, 2009 WL 10693913 (D. Nev. June 23, 2009)...............23

*Dresner v. Utility.com, Inc.*,
    371 F. Supp. 2d 476 (S.D.N.Y. 2005)..............................................13

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................21, 22

*ESG Capital Partners, LP v. Stratos*,
    No. CV 13-01639 ODW(SHX), 2013 WL 12131355 (C.D. Cal. June 26, 2013) ...................20

*Emergent Capital Inv. Mgmt. v. Stonepath Grp.*,
    343 F.3d 189 (2d Cir. 2003)..............................................................13

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008)...............................................16, 17, 19

*Goel v. Jain*,
    259 F. Supp. 2d 1128 (W.D. Wash. 2003) ......................................7

*Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004)...................................................................................13

*Hayley v. Parker*,
   No. Civ.01–0069, 2002 WL 925322 (C.D. Cal. Mar 15, 2002) ...............................16

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990)...................................................................................9

*In re 2TheMart.com, Inc. Sec. Litig.*,
   114 F. Supp. 2d 955 (C.D. Cal. 2000) .....................................................................17

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
   No. CIV.A. H-01-3624, 2003 WL 230688 (S.D. Tex. Jan. 28, 2003).........................9

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)....................................................................................4

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130, 1146 (9th Cir. 2017)..................................................................15, 16

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012)...............................................................................6, 18

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)....................................................................................15

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
   998 F.3d 397 (9th Cir. 2021)....................................................................................21

*Jackson v. Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) ..............................................................22, 23

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002)..............................................................................18, 19

*Lopez v. CTPartners Executive Search Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016).........................................................................13

*Mar. Asset Mgmt., LLC v. NeurogesX, Inc.*,
   No. 12-CV-5034 YGR, 2013 WL 5442394 (N.D. Cal. Sept. 30, 2013)....................19

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).........................................................................................5, 6, 8, 16

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008)...........................................................................*passim*

*Mohebbi v. Khazen*,
   50 F. Supp. 3d 1234 (N.D. Cal. 2014) ...................................................................................... 22

*Oracle Partners, L.P. v. Concentric Analgesics, Inc.*,
   No. 20-CV-03775-HSG, 2021 WL 2322351 (N.D. Cal. June 7, 2021) ................................... 21

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ........................................................................................... 5, 21

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .............................................................................................. 6, 7

*Prodanova v. H.C. Wainwright & Co.*,
   993 F.3d 1097 (9th Cir. 2021) ................................................................................. 1, 16, 18, 19

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ..................................................................................................... 4

*Resnik v. Swartz*,
   303 F.3d 147 (2d Cir. 2002) ..................................................................................................... 6

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett–Packard Co.*,
   52 F. Supp. 3d 961 (N.D. Cal. 2014),
   *aff'd*, 845 F.3d 1268 (9th Cir. 2017) ............................................................................... 12, 13

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett–Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) ............................................................................................ 8, 12

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ................................................................................................... 16

*Rowe v. Maremont Corp.*,
   850 F.2d 1226 (7th Cir. 1988) ................................................................................................. 19

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ........................................................................................... 14, 15

*Solomon v. Jacobson*,
   No. ED15CV01453VAPJPRX, 2016 WL 6023821 (C.D. Cal. July 6, 2016) ........................... 7

*Stoneridge Inv. Partners, LLC v. Sci.–Atlanta*,
   552 U.S. 148 (2008) ................................................................................................................. 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................................... 15, 16

*Veal v. LendingClub Corp.*,
   No. 18-CV-02599-BLF, 2020 WL 3128909 (N.D. Cal. June 12, 2020),
   *aff'd*, No. 20-16603, 2021 WL 4281301 (9th Cir. Sept. 21, 2021) .......................................... 4

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785, 819 (N.D. Cal. 2019) ................................................ 10, 16, 17

*Wallack v. Idexx Labs., Inc.*,
   No. 11-cv-2996-GPC (KSC), 2013 WL 5206190 (S.D. Cal. 2013) ................................. 22, 23

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ................................................................. 5, 15

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ................................................................ 4, 18

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................. 4, 18


**Statutes, Rules, and Treatises**

Cal. Corp. Code § 25401 ............................................................................ 22

Fed. R. Civ. P. 9(b) ......................................................................... 1, 5, 21, 23

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 4

Private Securities Litigation Reform Act,
   Pub. L. 104–67, 109 Stat. 737
   (codified as amended in scattered sections of 15 U.S.C.) ........................................ *passim*

   15 U.S.C. § 78u–4(b)(1) ......................................................................... 5, 14

   15 U.S.C. § 78u–4(b)(2)(A) ......................................................................... 15

Restatement (Second) of Agency §§ 82, 83, 85, 219(1), 228 ....................................... 9, 10

SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 ............................................................... 5

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ............................ 5

1  Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant

2  Ozy Media, Inc. ("OZY," "Ozy Media," or "the Company") moves to dismiss the First

3  Amended Complaint ("FAC") filed by Plaintiff LifeLine Legacy Holdings LLC ("LifeLine")

4  on October 26, 2021 [ECF No. 18].

5  <u>**INTRODUCTION**</u>

6  LifeLine's barebones pleading could have been written by Rip Van Winkle; it reads as

7  if the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104–67, 109 Stat.

8  737 (codified as amended in scattered sections of 15 U.S.C.), was never passed, and 25 years of

9  federal case law construing that statute's "formidable" pleading requirements never happened.

10  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

11  LifeLine does not make the slightest effort—even after amendment—to specify with the

12  necessary particularity material misrepresentations or omissions made to induce it to invest in

13  OZY.  The PSLRA demands articulation of specific facts; instead, the FAC offers only

14  summaries and surmise.  For these reasons alone the FAC falls far short of the strict standard

15  required of securities fraud claims and must be dismissed.

16  But LifeLine's theory of liability is also fatally flawed insofar as it attempts—without a

17  shred of evidence—to extrapolate a concerted fraud on LifeLine from one isolated act of

18  misconduct by a senior executive at OZY in a due diligence call with another potential investor,

19  Goldman Sachs.  The FAC offers no facts to establish that representations made to LifeLine

20  were false or fraudulent, or to support a cogent and compelling theory of fraudulent intent.  The

21  Ninth Circuit has warned against such leaps of logic.  An "apparent error—even an

22  embarrassing, or inexplicable one—does not establish fraudulent intent."  *Prodanova v. H.C.*

23  *Wainwright & Co., LLC*, 993 F.3d 1097, 1107 (9th Cir. 2021).  As further demonstrated herein,

24  the FAC should be dismissed.

25

26

27

28

1

### BACKGROUND[1]

2

OZY is a digital media company founded in 2013 by Carlos Watson and Samir Rao.

3 FAC ¶¶ 11–13. The Company to this date is privately held, and has its principal place of

4 business in California. *Id.* ¶ 10. At all times relevant to the allegations of the FAC, Watson

5 served as OZY's Chief Executive Officer while Rao served as Chief Operating Officer. *Id.*

6 ¶ 4. In 2020 and 2021, OZY was in the process of raising capital to fund expansion of its

7 operations. Among those entities interested in the Company were Goldman Sachs

8 ("Goldman") and LifeLine.

9

In February 2021, Goldman was actively engaged in exploring an investment in OZY.

10 *See* FAC ¶¶ 14–15. According to the FAC, however, during a Goldman due diligence call on

11 February 2, 2021, Defendant Rao "impersonated an executive of YouTube and

12 misrepresented viewership of Ozy Media programming shown on YouTube." *Id.* ¶ 6. The

13 FAC does not allege that representatives of any other investors were present on this call.

14 Ultimately, Goldman chose not to invest, *see id.* ¶ 14; according to the FAC, it was because

15 Goldman had learned of the impersonation. *Id.* ¶¶ 6, 14.

16

During this same period of time, LifeLine was also conducting its own due diligence

17 in contemplation of a potential investment in OZY. According to the FAC, LifeLine was in

18 communication with Company representatives on February 10, 14, 15, 16, 17, and 18, 2021.

19 As alleged, during a telephone call on February 15, 2021, Watson informed LifeLine that

20 Goldman had decided against investing. FAC ¶ 14. The FAC alleges that neither Watson

21 nor Rao explained to LifeLine the reason why Goldman declined to invest. However, the

22 FAC does not state that LifeLine ever asked for an explanation. *See id.*

23

Even after learning of Goldman's decision not to invest, LifeLine continued to

24 engage in further communications with the Company and ultimately decided to go forward

25

26

27

28

---

[1] Solely for purposes of this motion, OZY assumes any well-pled allegations in the FAC to be true. OZY reserves its right to dispute all of the facts alleged in the FAC should the matter proceed past the complaint stage.

with its own investment.  On or about February 24, 2021, LifeLine entered into a Series C Stock Purchase Agreement ("Series C SPA") pursuant to which it agreed to purchase approximately $2 million of Series C Preferred Shares in OZY.  *Id.* ¶ 15.

Months later, on or about May 13, 2021, LifeLine entered into a Series D Stock Purchase Agreement ("Series D SPA") pursuant to which LifeLine purchased an additional $250,000 of Series D Preferred Shares in OZY.  *Id.* ¶ 19.

Both the Series C and D SPAs (collectively, the "SPAs"), attached as Exhibits B and C to the Declaration of William J. Edelman ("Edelman Decl."), submitted concurrently herewith, were signed by Watson on behalf of OZY and represented that "to the Company's knowledge, the Company is not in violation of any federal or state statute, rule or regulation applicable to the Company."  *See* Series C SPA ¶ 3.11; Series D SPA ¶ 3.11.  Each of the SPAs also included integration clauses that stated, "[n]o party shall be liable or bound to any other party in any manner with regard to the subjects hereof . . . by any warranties, representations or covenants except as specifically set forth herein . . . ."  *See* Series C SPA ¶ 7.8; Series D SPA ¶ 7.8.

In late September 2021, the *New York Times* published an article that publicly disclosed the February 2, 2021 incident involving Rao and Goldman.  The article also reported that Google had informed the Federal Bureau of Investigation about the incident, and that Goldman had received an inquiry from federal law enforcement.  *See* FAC ¶ 26; Ben Smith, *Goldman Sachs, Ozy Media and a $40 Million Conference Call Gone Wrong*, N.Y. Times (Sept. 26, 2021) (updated Nov. 3, 2021) (attached as Exhibit A to the Edelman Decl.). This lawsuit followed shortly thereafter.

On October 4, 2021, LifeLine filed a twelve-page Complaint alleging five claims for relief against OZY and Rao.  [ECF No. 1].  LifeLine subsequently amended the Complaint, filing the FAC on October 26, 2021.  [ECF No. 18].  The gravamen of the FAC is that Defendants allegedly committed fraud against LifeLine by failing to disclose the details of the February 2, 2021 incident involving Rao and Goldman prior to LifeLine's investments in

1  the Series C and Series D rounds.  Based on this allegedly material omission, the FAC asserts

2  fraud claims under the federal securities law, state securities law, and state common law.

3                                                **ARGUMENT**

4      **I.      LEGAL STANDARD FOR A MOTION TO DISMISS.**

5          In assessing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

6  Procedure, a court "accepts as true all well-pled factual allegations and construes them in the

7  light most favorable to the plaintiff."  *Veal v. LendingClub Corp.*, No. 18-CV-02599-BLF,

8  2020 WL 3128909, at *4 (N.D. Cal. June 12, 2020) (citing *Reese v. BP Exploration (Alaska)*

9  *Inc.*, 643 F.3d 681, 690 (9th Cir. 2011)), *aff'd*, No. 20-16603, 2021 WL 4281301 (9th Cir.

10  Sept. 21, 2021).  The court may also consider "'materials incorporated into the complaint by

11  reference' and any 'matters of which [the court] may take judicial notice.'"  *Wochos v. Tesla,*

12  *Inc.*, 985 F.3d 1180, 1185 (9th Cir. 2021) (quoting *Zucco Partners, LLC v. Digimarc Corp.*,

13  552 F.3d 981, 989 (9th Cir. 2009)).  Thus, the court need not "accept as true allegations that

14  contradict matters properly subject to judicial notice" or "allegations that are merely

15  conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Veal*, 2020 WL

16  3128909, at *4 (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

17      **II.     THE FAC FAILS TO STATE A CLAIM FOR FEDERAL SECURITIES**
18              **FRAUD (FIRST, SECOND, AND THIRD CLAIMS).**

19          **A.  Legal Standard for a Section 10(b) Securities Claim.**

20          Section 10(b) of the Securities Exchange Act of 1934 makes it "unlawful for any

21  person, directly or indirectly, by the use of any means or instrumentality of interstate

22  commerce or of the mails . . . [t]o use or employ, in connection with the . . . sale of any

23  [registered or unregistered] security . . . any manipulative or deceptive device or contrivance"

24  that violates rules and regulations prescribed by the Securities and Exchange Commission

25  ("SEC").  15 U.S.C. § 78j(b).  Rule 10b–5 further provides that it is unlawful,

26          directly or indirectly, by the use of any means or instrumentality of interstate
            commerce, or of the mails or of any facility of any national securities exchange,
27          (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue
            statement of a material fact or to omit to state a material fact necessary in order
28          to make the statements made, in the light of the circumstances under which they

1   were made, not misleading, or (c) To engage in any act, practice, or course of
2   business which operates or would operate as a fraud or deceit upon any person,
    in connection with the purchase or sale of any security.

3   17 C.F.R. § 240.10b-5.

4   An investor who seeks to pursue a private cause of action under § 10(b) and Rule

5   10b–5, must plead six elements: "(1) a material misrepresentation or omission by the

6   defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the

7   purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

8   (5) economic loss; and (6) loss causation." *Webb v. Solarcity Corp.*, 884 F.3d 844, 850 (9th

9   Cir. 2018) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)).

10  As to each of the foregoing elements, the complaint "must meet the higher, exacting

11  pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities

12  Litigation Reform Act (PSLRA)." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774

13  F.3d 598, 604 (9th Cir. 2014). Rule 9(b) generally "requires that '[i]n alleging fraud or

14  mistake, a party must state with particularity the circumstances constituting fraud or

15  mistake.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). The PSLRA demands further that a federal

16  securities complaint "shall specify each statement alleged to have been misleading, the

17  reason or reasons why the statement is misleading, and, if an allegation regarding the

18  statement or omission is made on information and belief, the complaint shall state with

19  particularity all facts on which that belief is formed." *Metzler Inv. GMBH v. Corinthian*

20  *Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (quoting 15 U.S.C. § 78u–4(b)(1)). The

21  Ninth Circuit has expressly warned against complaints "laden with vague allegations of

22  deception unaccompanied by a particularized explanation stating *why* the defendant's alleged

23  statements or omissions are deceitful." *Id.* (citation omitted).

24  As explained more fully herein, the FAC does not allege the elements for a claim

25  under § 10(b) and Rule 10b–5 with the particularity required by Rule 9(b) and the PSLRA.

26  The First through Third Claims should therefore be dismissed for failure to meet the exacting

27  standard required to state a claim for federal securities fraud.

28

**B.   The FAC Does Not Allege Any Actionable Omission with Particularity.**

LifeLine's primary theory of liability in this case is fraud by omission.  The securities laws treat omissions differently from affirmative representations.  For LifeLine to prevail on its omission theory, it must plead either:  (1) OZY had an affirmative duty to disclose the details of the Rao and Goldman incident to LifeLine prior to LifeLine's investments; or (2) OZY's failure to disclose details of the incident rendered false or misleading some other material statement OZY made to LifeLine.  The FAC does neither and thus fails to state any actionable omission.

*1.   OZY Owed LifeLine No Affirmative Duty to Disclose the Alleged Omission.*

Section 10(b) and Rule 10b–5 "do not create an affirmative duty to disclose any and all material information."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5.").  "Disclosure of . . . information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012) ("[E]ven if some investors might have wanted more extensive information . . . , that would not be sufficient to make the alleged original statements false or misleading.").  For an alleged omission to be actionable under § 10(b) and Rule 10b–5, "[t]he person who omitted the material information must have had a duty to disclose it to the person supposedly harmed by the omission."  *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) (per curiam) (citing *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996)).

In its Seventh Claim for Relief under California common law, the FAC alleges in conclusory fashion: "Pursuant to the Stock Repurchase [sic] Agreements, a fiduciary and confidential relationship existed between Defendants, and each of them, and Plaintiff."  FAC ¶ 61.  Curiously, the FAC does not expressly allege a fiduciary relationship between OZY and LifeLine in connection with any of the claims for federal securities fraud.  *See generally id.* ¶¶ 1–44.  In any event, such perfunctory and conclusory allegations fail as a matter of law.

1     The SPAs that LifeLine entered into in connection with its investments contain no

2     provision establishing or recognizing a fiduciary duty between the parties.  To the contrary,

3     each of the SPAs contains a clause that states, in relevant part, that LifeLine "has substantial

4     experience in evaluating and investing in [similar transactions]," "can protect its own

5     interests," and "is capable of evaluating the merits and risks of its investment in the

6     Company."  *See* Series C SPA ¶ 4.3; Series D SPA ¶ 4.3; *Solomon v. Jacobson*, No.

7     ED15CV01453VAPJPRX, 2016 WL 6023821, at *5–6 (C.D. Cal. July 6, 2016) (stock

8     purchase agreement did not show fiduciary relationship existed during negotiations absent

9     evidence of "a special trust in another or a special duty . . . between parties rising to the level

10    that the relationship connotes a dependence" (citation omitted)).

11    Nor does the FAC allege one single fact or circumstance that would support a

12    relationship of special trust between the parties sufficient to independently give rise to such a

13    fiduciary duty.  Instead, the FAC references a careful due diligence process between two

14    companies—including at least eight distinct communications between LifeLine and OZY's

15    principals, *see* FAC ¶¶ 14, 18—leading to the signing of two formal investment contracts, the

16    Series C SPA and the Series D SPA.  *Id.* ¶¶ 15, 19.  The SPAs themselves also reflect that the

17    parties were represented or had the opportunity to be represented by independent legal

18    counsel.  *See* Series C SPA ¶ 7.18; Series D SPA ¶ 7.18.

19    The only reasonable inference from these facts is that the investments LifeLine made

20    in OZY were the result of arms-length transactions between two independent and

21    sophisticated business entities.  And, as the Ninth Circuit has explained, "parties to an

22    impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or

23    agency relationship, prior dealings, or circumstances such that one party has placed trust and

24    confidence in the other."  *Paracor*, 96 F.3d at 1157 (citation omitted); *see also Goel v. Jain*,

25    259 F. Supp. 2d 1128, 1137 (W.D. Wash. 2003) (no fiduciary relationship where, among

26    other things, "each side was responsible for its own due diligence and could terminate the

27    relationship if their investigation showed that the deal was not in their best interests").

28

1  The stark absence here of any specific allegations demonstrating a relationship of

2  special trust between OZY and LifeLine compels the conclusion that LifeLine has failed to

3  establish any affirmative duty to disclose on the part of OZY.

### 2. *No Material Statement Was Rendered False or Misleading by the Alleged Omission.*

6  Absent an independent duty to inform LifeLine of the details of the February 2, 2021

7  incident involving Rao and Goldman, the alleged omission is not actionable unless the failure

8  to disclose the information rendered false or misleading some other affirmative *material*

9  statement by one of the Defendants.  As the Supreme Court has held, "[d]isclosure is

10  required . . . only when necessary 'to make . . . statements made, in light of the circumstances

11  under which they were made, not misleading.'"  *Matrixx Initiatives*, 563 U.S. at 44 (second

12  alteration in original) (quoting 17 C.F.R. § 240.10b–5(b)); *see Retail Wholesale & Dep't*

13  *Store Union Loc. 338 Ret. Fund v. Hewlett–Packard Co.*, 845 F.3d 1268, 1278 (9th Cir.

14  2017) (where a statement is not material in the first place, no omission regarding such

15  statement can be material).

16  In seeking to support its fraud-by-omission theory, LifeLine points to two sets of

17  alleged affirmative representations: (a) the standard warranties in the SPAs regarding the

18  Company's general compliance with laws and regulations; and (b) purported oral

19  representations made by Watson and Rao to LifeLine during the due diligence process.  As

20  explained below, the FAC fails to articulate how any of these representations were material

21  and/or rendered false or misleading by omission of the Rao and Goldman incident.

### a.   The SPA Warranties

23  The only affirmative representation that LifeLine pleads with any degree of

24  particularity is the standard boilerplate warranty in both the Series C and Series D SPAs that,

25  "to the Company's knowledge, the Company is not in violation of any federal or state statute,

26  rule or regulation applicable to the Company."  FAC ¶ 14.  To properly plead falsity,

27  however, a plaintiff must allege specific facts demonstrating and explaining how such

28  warranties were deceitful.  *See Metzler*, 540 F.3d at 1061.  LifeLine has failed to do so.

The FAC's theory is founded entirely on the naked assumption that the isolated incident with Goldman translated into a violation of law *by the Company* and by implication a fraud on LifeLine.  That is wrong for at least three reasons.  First, the FAC assumes without support that Rao was acting within the scope of his employment with OZY in attempting to impersonate a YouTube executive, and that his conduct could therefore be imputed to the Company.  Second, the existence of a government investigation does not equate to a violation of law.  And, finally, any adverse impact on the Company's reputation arising from the later disclosure of the Rao incident by the press does nothing to prove that the warranties in the SPAs were false at the time they were made.

The FAC does not attempt to explain how Rao's exceptional and *ultra vires* conduct impersonating an executive from another company (YouTube) could legally be imputed to OZY as conduct within the scope of his employment.  *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576–78 (9th Cir. 1990) (imputation to company under federal securities laws premised on common law of agency and *respondeat superior*).  Another federal district court has noted the multiplicity of factors that must be considered before reaching a conclusion of *respondeat superior* in the federal securities law context:

> Whether the act was within the scope of an individual's employment depends on such factors as the time, place and purpose of the act, the similarity of the act to others that the servant is authorized to perform, whether the act is generally performed by servants, the degree the servant departed from usual methods, and whether the master might reasonably expect the servant to perform the act.

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV.A. H-01-3624, 2003 WL 230688, at *7 n.16 (S.D. Tex. Jan. 28, 2003); *see also id.* (citing Restatement (Second) of Agency §§ 219(1), 228).  LifeLine has not begun to make such a showing in its pleading.  Nor could it readily do so; impersonating an executive from another company is by definition an act outside the scope of one's authority, and, moreover, suggests an extreme and unanticipated departure from "usual methods."

Absent a showing that Rao acted within the scope of his employment when attempting to impersonate an executive from YouTube, LifeLine would alternatively have to demonstrate that Rao's improper conduct was nonetheless ratified and/or endorsed by OZY.

*See Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 318 (S.D.N.Y. 2006) ("Even in the absence of actual or apparent authority, a person may still be liable as a principal if he affirms or ratifies 'an act done by one who purports to be acting for the ratifier.'" (quoting *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.*, 758 F. Supp. 908, 921 (S.D.N.Y. 1991) (citing Restatement (Second) of Agency §§ 82, 83, 85))).  Once again, the FAC fails to allege with particularity any such thing.  Instead, the only reasonable inference supported by the allegations of the FAC is that the Rao impersonation was an isolated incident that was immediately acknowledged and addressed by the Company, leading Goldman to decline to invest and Watson to inform other investors such as LifeLine about Goldman's decision.  LifeLine's failure to plead the elements of *respondeat superior* are enough to doom its theory of a violation of law by the Company.

The FAC fares no better in attempting to bootstrap its claim of falsity by pointing to the existence of government investigations allegedly commenced at the time the SPAs were signed in February and May of 2021.  First, the FAC fails to establish that any government investigation began before LifeLine signed the SPAs, or, if there were any such investigation, that OZY had any knowledge of it.[2]  But second, and most important, the mere existence of a government investigation does not prove that the SPA warranties were false.  *Metzler*, 540 F.3d at 1071; *see Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) ("the mere existence of an FTC investigation . . . does not mean that . . . [the] conduct [eventually alleged in the FTC Action] violated FTC rules").  To date, as LifeLine tacitly concedes, no charges have been brought against the Company, and even if they had been, no violation has been proved.

The allegations here parallel those that the Ninth Circuit confronted and dismissed in *Metzler*.  In that case the plaintiff had purchased stock in Corinthian Colleges, Inc., a

---

[2] Contrary to LifeLine's allegations, Watson did not acknowledge during an October 5, 2021 radio interview "that government agency investigations of the company's and Rao's actions had been initiated" by the time of LifeLine's investment decisions.  *See* FAC ¶ 22.

consortium of 88 colleges in 22 states.  Plaintiff alleged that the Corinthian College system was pervaded with fraud, and that the College's stated financial results in its public disclosures were false and misleading.  To support its claim, plaintiff pointed to two facts that had not been disclosed to investors: (i) that the Department of Education had commenced an investigation in December 2003 into Corinthian's Bryman College Campus; and (ii) that findings of that investigation revealed "that school officials had helped students manipulate financial aid documents to obtain the maximum possible toward tuition fees—breaching Title IV of the Higher Education Act."  540 F.3d at 1057.  This investigation and its negative findings were not reported in the company's fourth quarter 2003 or first quarter 2004 SEC filings.  *Id*.  The details only came to light months later in a *Financial Times* article on June 24, 2004.  A subsequent company press release issued on August 2, 2004, further revealed that the California Attorney General had also commenced an investigation and that the company had adjusted its revenue forecast, based on, among other things, "higher than anticipated attrition" rates at the schools.  Once the news of these two investigations broke, Corinthian's stock lost 45% of its value.  *Id*. at 1059.

Despite the magnitude of these two government investigations into the Corinthian Colleges, however, the Ninth Circuit ultimately found no securities violation for omission of this information from the company's quarterly reports.  The Ninth Circuit held that neither the existence of two investigations nor the discovery of financial improprieties at *one* of Corinthian's campuses (the Bryman campus) was sufficient to prove "widespread financial aid manipulation" on a company-wide basis rendering all the company financials false.  *Id*. at 1063.  As the court of appeals held, "[t]he TAC does not allege that the June 24 and August 2 announcements disclosed—or even suggested—to the market that Corinthian was manipulating student enrollment figures company-wide in order to procure excess federal funding, which is the fraudulent activity that Metzler contends forced down the stock that caused its losses.  Neither the June 24 *Financial Times* story nor the August 2 press release regarding earnings can be reasonably read to reveal widespread financial aid manipulation by Corinthian . . . ."  *Id*.; *see also id.* at 1071 (allegations did not establish falsity).

By the same token, in this case, the facts that (1) Rao may have acted improperly in a communication with Goldman, and that (2) government investigations later commenced as a result—as revealed in the *New York Times* article of September 2021—do not translate into widespread corporate malfeasance that directly affected LifeLine.

Lacking any evidence of an actual violation of law by the Company, LifeLine attempts to argue that the *impact* that disclosure of the Rao incident *subsequently* had on the Company transformed the failure to disclose the incident to LifeLine into a material omission. According to the FAC, OZY, Watson, and Rao "knew, or should have known, that such conduct could cause substantial, even lethal, harm to the company and the interests of its shareholders." *See* FAC ¶ 23. Putting aside for a moment the impropriety under the PSLRA of pleading what an officer "should have known," this theory of fraud is flawed because it alleges a set of circumstances that have no bearing whatsoever on the question whether the Company committed any wrongdoing. Whatever whiff of scandal the *New York Times* article may have stirred up, neither the article nor the reaction to it constitute proof of a violation of the law by the Company.

This Court in particular has recognized that consequences that may arise due to revelations of misconduct by a senior executive are not sufficient to establish material falsity. In *Retail Wholesale & Department Store Union Local 338 Retirement Fund v. Hewlett–Packard Co.*, for example, this Court addressed Hewlett–Packard's failure to disclose facts about misconduct by its CEO, Mark Hurd, which led to his resignation. 52 F. Supp. 3d 961 (N.D. Cal. 2014), *aff'd*, 845 F.3d 1268 (9th Cir. 2017). Among the allegations against the CEO were charges of sexual harassment, insider trading, and the submission of inaccurate expense reports. In the immediate aftermath of the CEO's departure under a cloud, the share price of the company declined by 12.6%, and months later had lost some 69% of its value. As one article summed up the incident, "it seems safe to say that Hurd's departure from HP has cost the company's shareholders at least $10 billion and probably a lot more." *Id.* at 967. Despite these damning facts and severe consequences, the Court found no violation of the securities laws: "Plaintiff's theory of liability appears to be that a corporation or senior

1    executive is liable whenever that executive is involved in misconduct that might lead to his
2    or her resignation or termination, regardless of the nature of that misconduct, unless the
3    conduct is disclosed.  But that is not the law."  *Id*. at 971.

4           And the fact that the public may at a later point in time respond negatively to
5    information omitted from disclosure does not mean that the omission thereby becomes
6    actionable by hindsight.  *Hewlett–Packard*, 52 F. Supp. 3d at 967; *see also Lopez v.*
7    *CTPartners Executive Search Inc*., 173 F. Supp. 3d 12 (S.D.N.Y. 2016) ("that the market
8    reacted adversely to the *NY Post*'s articles exposure of Sullivan's naked romp and related
9    failings at CTPartners does not, therefore, mean that the Company's prior statements . . . are
10   actionable"); *see also Greenhouse v. MCG Capital Corp*., 392 F.3d 650, 656 (4th Cir. 2004)
11   ("the securities laws decidedly do not prohibit any misrepresentation—no matter how willful,
12   objectionable or flatly false—of immaterial facts, even if it induces reactions from investors
13   that, in hindsight or otherwise, make the representation appear material").

14                  *b.   Alleged Oral Misrepresentations*

15          Apart from the SPA warranties, the FAC relies on *oral* statements allegedly made to
16   LifeLine during the due diligence process to support its claim of fraud by omission.  Once
17   again LifeLine oversteps its bounds.  The SPAs include integration clauses that provide that
18   "[n]o party shall be liable or bound to any other party in any manner with regard to the
19   subjects hereof . . . by any warranties, representations or covenants except as specifically set
20   forth herein . . . ."  Series C SPA ¶ 7.8; Series D SPA ¶ 7.8.  Thus, at the time LifeLine
21   entered into the investment contracts, it expressly waived reliance on any statements other
22   than those contained in the SPAs.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493
23   F.3d 87, 105 (2d Cir. 2007) ("Where the plaintiff is a sophisticated investor and an integrated
24   agreement between the parties does not include the misrepresentation at issue, the plaintiff
25   cannot establish reasonable reliance on that misrepresentation." (citing *Emergent Capital Inv.*
26   *Mgmt. v. Stonepath Grp.*, 343 F.3d 189, 196 (2d Cir. 2003); *Dresner v. Utility.com, Inc.*, 371
27   F. Supp. 2d 476, 491–93 (S.D.N.Y. 2005))).

28

1    Even were any oral representations made during the due diligence process

2    theoretically actionable, the FAC does not plead that any affirmative representations made to

3    LifeLine (let alone any material ones) were in fact false.  The PSLRA requires that "the

4    complaint shall specify *each* statement alleged to have been misleading, the reason or reasons

5    why the statement is misleading, and, if an allegation regarding the statement or omission is

6    made on information and belief, the complaint shall state with particularity all facts on which

7    that belief is formed."  *Metzler*, 540 F.3d at 1061 (quoting 15 U.S.C. § 78u–4(b)(1))

8    (emphasis added); *see Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir.

9    2002) ("complaint must specify the reason or reasons why the statements made . . . were

10   misleading or untrue, not simply why the statements were incomplete").

11   The FAC falls far short of this standard of specificity.  Instead, the FAC makes only

12   the most summary references to "discussions" that LifeLine had with Watson and Rao on

13   February 10, 14, 15, 16, 17, and 19, 2021, in which Rao and Watson allegedly made

14   representations about "Ozy Media's strong financial performance, seemingly impressive

15   viewership metrics and significant institutional investor interest."  *See* FAC ¶ 14.  This

16   allegation fails to specify what precise statements were made in those discussions, and—

17   most important—what, if anything, was materially false and/or misleading about them, or

18   how they were rendered false or misleading by omission of the Goldman and Rao incident.

19   Doubling down on the innuendo and speculation that pervades its pleading, LifeLine

20   closes the FAC with the observation that it "suspects that additional illegal, improper or

21   otherwise inappropriate conduct occurred at the company *prior* to when LifeLine made its

22   investments that was not disclosed to LifeLine."  *See* FAC ¶¶ 25–26 (emphasis added).

23   Those allegations fail, because where allegations are made "on information and belief" the

24   PSLRA requires that the complaint must "state with particularity all facts on which that

25   belief is formed."  15 U.S.C. § 78u–4(b)(1).

26   Indeed, the Ninth Circuit rejected similarly vague allegations in *Rubke v. Capitol*

27   *Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009).  In that case, Capitol Bancorp ("Capitol") made

28   a tender offer to acquire Napa Community Bank ("NCB").  According to plaintiff, one of

NCB's board members—Dennis Pedisich—improperly attempted, at Capitol's urging, to cajole NCB shareholders to accept the deal.  *Id.* at 1165.  The Ninth Circuit concluded that the allegation, "based only on 'information and belief,'" failed "to allege with the requisite particularity that Pedisich called the minority shareholders at the behest of Capitol or its executive officers."  *Id.* at 1166.  The court of appeals explained that plaintiff had "failed to reveal the sources of her information with regard to the telephone conversations, and [had] not otherwise described how she knows that Capitol 'exhorted' Pedisich to make the calls."  *Id.* (internal quotation marks and citation omitted); *see also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) ("It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate her claim."), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017).

The FAC in paragraphs 25 and 26 does not identify the substance of such "otherwise inappropriate conduct," let alone the sources of information for such claims or how LifeLine otherwise knows such claims to be true.  The PLSRA does not countenance such speculative and unfounded allegations that merely assume the worst.

In the final analysis, the FAC simply assumes what it needs to prove.  But as the Ninth Circuit has made clear, "this Circuit has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's . . . statements regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud generally."  *See Metzler*, at 1070–71 (collecting cases).

### C.  The FAC Fails to Allege Scienter with Particularity.

Under the PSLRA, a complaint must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2)(A) (emphasis added).  A "strong inference" is "more than merely plausible or reasonable."  *Webb v. Solarcity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).  "Rather, a 'strong inference' is an inference that is 'cogent and at least as compelling as any opposing inference one could

1    draw from the facts alleged.'" *Id.* (quoting *Tellabs*, 551 U.S. at 324).  In assessing whether a

2    complaint pleads a "strong" inference, the court must ask: "When the allegations are

3    accepted as true and taken collectively, would a reasonable person deem the inference of

4    scienter at least as strong as any opposing inference?" *Id.* (quoting *Tellabs*, 551 U.S. at 326)

5    (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48–50 (2011)).

6          As to the requisite state of mind, a plaintiff may plead scienter "by alleging facts

7    demonstrating an 'intent to deceive, manipulate, or defraud' or 'deliberate recklessness.'" *Id.*

8    at 851 (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017)).

9    Generally, a plaintiff is also required to assert a "plausible motive" to establish a strong

10   inference of scienter. *See Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th

11   Cir. 2021) ("Only where a complaint otherwise asserts compelling and particularized facts

12   showing fraudulent intent or deliberate recklessness will we overlook the failure to allege a

13   plausible motive." (citations omitted)).

14         The allegations of the FAC do not create a strong inference of fraudulent intent on the

15   part of any of the Defendants.  Given that the only theoretically actionable statements

16   rendered false or misleading by omission of the Rao incident are the warranties in the SPAs

17   signed by Carlos Watson, LifeLine's theory of scienter turns solely on Watson's state of

18   mind.  *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (rejecting

19   "doctrine of collective scienter" that would "excuse[] [plaintiff] from pleading individual

20   scienter with respect to . . . legal warranties" in merger agreement that "warranted that the

21   company was in compliance 'with all laws'").

22         Furthermore, "any allegation of scienter must be specific to [defendant's] state of

23   mind *at the time she made the statements*."  *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785,

24   819 (N.D. Cal. 2019) (emphasis added); *see also Metzler*, 540 F.3d at 1066 ("[T]he

25   complaint must contain allegations of specific contemporaneous statements or conditions that

26   demonstrate the intentional or the deliberately reckless false or misleading nature of the

27   statements when made." (citing *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001));

28   *Hayley v. Parker*, No. Civ.01–0069, 2002 WL 925322, at *3 (C.D. Cal. Mar. 15, 2002)

1    (plaintiff must establish "the defendant's scienter at the time of the misrepresentation or

2    omission"); *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 959 (C.D. Cal. 2000)

3    (same).  Here, the FAC alleges no facts whatsoever showing that Watson, even if he was

4    aware of Rao's conduct and its alleged impact on Goldman, knew or believed when he

5    signed the SPAs that the Company had acted in violation of the law.

6        LifeLine hangs its hat on the unsupported insinuation that a government investigation

7    had commenced by the time Watson signed the SPAs.  *See* FAC ¶ 24.  Even if true, such a

8    fact is insufficient in and of itself to establish a fraudulent state of mind on Watson's or

9    OZY's part.  As this Court has recognized, "the mere existence of [a government]

10   investigation . . . does not mean that Defendants were aware . . . that [certain] conduct

11   violated [regulatory] rules."  *See Veal*, 423 F. Supp. 3d at 806.  To make a credible claim of

12   fraudulent intent in these circumstances, a plaintiff must first establish (1) *when* the

13   government investigation began; (2) *what* the substance of that investigation was; and (3) *if*

14   *and when* the government informed the Defendant—here, Watson—that the Company was in

15   violation of the law for the conduct alleged.  *See id*.  LifeLine does none of this.

16       Implicitly acknowledging that the Rao incident did not in and of itself render the SPA

17   warranties false at the time the SPAs were signed, LifeLine resorts to further pleading by

18   hindsight.  According to the FAC, Watson and Rao "knew, or should have known, that such

19   conduct could cause substantial, even lethal, harm to the company and the interests of its

20   shareholders."  *See* FAC ¶ 23.  Conclusory statements about what an officer or director

21   "should have known" are insufficient to pass muster under the PSLRA.  *See Glazer*, 549 F.3d

22   at 748 ("[I]nference that [executive] *should* have known of the violations . . .  is not sufficient

23   to meet the stringent scienter pleading requirements of the PSLRA." (citation omitted)); *see*

24   *also City of Roseville Emp. Ret. Sys. v. Sterling Fin. Corp.*, 691 F. App'x 393, 394 (9th Cir.

25   2017) (unpublished) (argument that executive "must have known" of falsity of statements "is

26   entirely speculative and does not rise to the required strong inference").

27       In addition, this allegation is not even about Watson's knowledge of facts *at the time*

28   he signed the SPAs.  Rather, it is about what Watson should have been able to predict about

1   the *future*.  This is pure speculation.  Moreover, it is speculation about the wrong

2   circumstances.  As noted, *supra*, whatever harm the Rao incident may have caused to the

3   Company's reputation after public disclosure in the *New York Times* article, it does not

4   logically follow that the Company violated the law, that Watson understood that the

5   Company violated the law at the time that he signed the SPAs, and that the warranties were

6   therefore false at the time they were provided to LifeLine.

7        In a final effort to shore up its paltry presentation, LifeLine further points to

8   statements made by Watson—long after LifeLine's investments—during a radio interview on

9   October 5, 2021.  *See* FAC ¶ 22; *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1185 (9th

10  Cir. 2021) (noting that in assessing a motion to dismiss the court may consider "materials

11  incorporated into the complaint by reference" (quoting *Zucco Partners, LLC v. Digimarc*

12  *Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).  Such statements are not actionable in and of

13  themselves as LifeLine could never have relied on them in entering into the SPAs months

14  earlier, in February and May 2021.  And, in any event, the FAC mischaracterizes those

15  statements.  For example, Watson did not "admit[]" during the interview that OZY, "through

16  Rao, engaged in unlawful and, more specifically, fraudulent conduct during the telephone

17  call with Goldman Sachs on February 2, 2021."  *See* FAC ¶ 22.

18       The FAC also fails to establish a plausible motive insofar as it sets forth no

19  compelling theory of pecuniary interest on the part of either Watson or Rao.  The Ninth

20  Circuit has made clear that "allegations of routine corporate objectives such as the desire to

21  obtain good financing and expand are not, without more, sufficient to allege scienter; to hold

22  otherwise would support a finding of scienter for any company that seeks to enhance its

23  business prospects."  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012)

24  (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002)); *see also*

25  *Prodanova*, 993 F.3d at 1107 ("Generally, we expect that a financial motive for securities

26  fraud will be clear; for example, someone inside a company stands to gain a substantial profit

27  by engaging in deceptive behavior, such as selling shares before the company discloses

28  negative information."); *Zucco Partners*, 552 F.3d at 1005 ("If simple allegations of

1    pecuniary motive were enough to establish scienter, 'virtually every company in the United

2    States that experiences a downturn in stock price could be forced to defend securities fraud

3    actions.'" (quoting *Lipton*, 284 F.3d at 1038)); *Glazer,* 549 F.3d at 748 (personal profit

4    motive that is present in almost every corporate transaction favoring the company is

5    insufficient to establish scienter); *Mar. Asset Mgmt., LLC v. NeurogesX, Inc.*, No. 12-CV-

6    5034 YGR, 2013 WL 5442394, at *7 (N.D. Cal. Sept. 30, 2013) (concluding that, absent

7    allegations of personal profit motive on part of executive, allegedly false statements "made

8    [by executive] specifically to investors who were considering entering into the SPA to

9    provide an infusion of capital to the Company" did not establish scienter).

10        To simply argue that Watson hid the Rao incident from LifeLine to induce an

11    investment in the Company does not meet the stringent scienter standards of the PSLRA.  In

12    any event, the facts as alleged support a more compelling and innocent inference:  that

13    Watson acted in the best interests of the Company and risked losing the LifeLine investment

14    by disclosing to LifeLine the fact that Goldman had declined to invest.

15        In sum, the FAC attempts to weave a theory of fraud around a single unfortunate

16    incident at the Company.  But, as the Ninth Circuit has recognized, an "apparent error—even

17    an embarrassing, or inexplicable one—does not establish fraudulent intent."  *Prodanova*, 993

18    F.3d at 1107.

### D.  The FAC Fails to Allege Reliance upon the Alleged Omission with Particularity.

21        The FAC fails to allege with particularity that there was a causal connection between

22    the alleged omission of the Rao incident and LifeLine's investments in OZY.  "Reliance

23    establishes the causal connection between the alleged fraud and the securities transaction."

24    *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) (per curiam) (citing

25    *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta*, 552 U.S. 148, 159 (2008)).  In other words,

26    "[t]o say that a plaintiff relied on a defendant's bad act is to say that the defendant's actions

27    'played a substantial part in the plaintiff's investment decision.'"  *Id.* (quoting *Rowe v.*

28    *Maremont Corp.*, 850 F.2d 1226, 1233 (7th Cir. 1988)).

1    Here, the FAC alleges that LifeLine invested in OZY based in part on the warranties

2    of legality in the SPAs as well as "direct assurances from Watson and Rao concerning Ozy

3    Media's strong business performance, investments by high profile institutional investors,

4    high viewer metrics, and competent and honest company management."  FAC ¶ 5.  As to the

5    latter, LifeLine could not have reasonably relied on any oral statements by Watson or Rao

6    during the due diligence process because LifeLine is a sophisticated investor, and both the

7    Series C and Series D SPAs include integration clauses that disclaim any reliance on

8    representations not set forth in the SPAs themselves.  "Where the plaintiff is a sophisticated

9    investor and an integrated agreement between the parties does not include the

10   misrepresentation at issue, the plaintiff cannot establish reasonable reliance on that

11   misrepresentation."  *ATSI Commc'ns, Inc.*, 493 F.3d at 105 (citations omitted).

12   But putting aside for a moment the fact that *only* the identified warranties in the SPAs

13   are theoretically actionable, LifeLine fails to articulate how the undisclosed Rao incident was

14   relevant to its investment decisions.  Indeed, the FAC supports the opposite conclusion.  As

15   the FAC concedes, Watson informed LifeLine before it signed the Series C SPA that

16   Goldman had decided not to invest in OZY.  FAC ¶ 14.  Strikingly absent from the FAC,

17   however, is any suggestion that LifeLine sought to know more about Goldman's decision.

18   The FAC does not allege that in any of the three due diligence calls that followed the

19   revelation of Goldman's withdrawal, LifeLine made inquiry as to the circumstances and the

20   reasons behind Goldman's decision not to proceed.  Clearly, then, Goldman's decision not to

21   invest, and hence any reason for it, was not germane to LifeLine's own investment calculus

22   in February 2021.  Any alleged connection to LifeLine's Series D investment in May 2021 is

23   even more attenuated as LifeLine alleges no further representations or omissions that might

24   have affected its decision to proceed with the second round of funding months later.

25   Because the FAC fails to plead reliance "with the level of factual specificity required

26   by the PSLRA," the Second and Third Claims should be dismissed.  *See ESG Capital*

27   *Partners, LP v. Stratos*, No. CV 13-01639 ODW(SHX), 2013 WL 12131355, at *6 (C.D.

28   Cal. June 26, 2013) (Plaintiff "fails to plead particularized facts establishing the requisite

causal connection between [defendants'] statements or omissions and how those statements or omissions 'played a substantial part in the plaintiff's investment decision.'" (quoting *Desai*, 573 F.3d at 939)).

### E.  The FAC Fails to Allege Economic Loss and Loss Causation with Particularity.

A complaint alleging federal securities fraud must provide the defendant "notice of what the relevant economic loss might be" and "of what the causal connection might be between that loss and the misrepresentation [or omission]." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  A complaint "must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the [plaintiff]." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 608 (9th Cir. 2014) (quoting *Ambassador Hotel Co. v. Wei–Chuan Inv.*, 189 F.3d 1017, 1027 (9th Cir. 1999)).  This Court has recognized that the same burden of pleading loss and loss causation with particularity applies whether the company is public or private.  *Oracle Partners, L.P. v. Concentric Analgesics, Inc.*, No. 20-CV-03775-HSG, 2021 WL 2322351, at *6–7 (N.D. Cal. June 7, 2021).

With respect to economic loss, LifeLine makes no attempt to quantify the amount of its alleged loss, simply demanding damages "not less than the difference between the amount paid by [LifeLine] for the shares in Ozy Media and the value of the shares following the disclosure of Rao's fraudulent conduct." *See* FAC ¶ 38; *see also id.* ¶ 44.  Such general allegations do not rise to level of particularity required by Rule 9(b) and the PSLRA, and are tantamount to pleading mere share inflation, which the Ninth Circuit has rejected.  *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 410 (9th Cir. 2021).

As for loss causation, LifeLine tries to draw a connection between the representations in the SPAs and the effect the revelations in the *New York Times* article may have had on the value of LifeLine's shares.  But as explained *supra*, the news report does not shed any light on the truth or falsity of the warranties.  And, even assuming that the value of LifeLine's shares in OZY may have declined following the revelation of the Rao incident and the

potential of a government investigation—a bare assumption at this time—the FAC does not demonstrate how any such alleged loss accurately reflects a correction of the market to the fraud alleged.  *See Metzler*, 540 F.3d at 1063–64; *see also Dura Pharms.*, 544 U.S. at 343 ("[L]ower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.").

Failure to adequately plead economic loss and loss causation are additional, independent bases for the Court to dismiss the Second and Third Claims.

### III.     THE FAC'S FAILURE TO STATE A CLAIM FOR FEDERAL SECURITIES FRAUD DOOMS ITS CLAIMS FOR FRAUD UNDER CALIFORNIA STATE LAW (FOURTH, FIFTH, SIXTH, AND SEVENTH CLAIMS).

The remaining claims in the FAC merely repackage the allegations of the First through Third Claims as alleged violations of California Corporations Code § 25401 (Fourth Claim through Sixth Claim) and fraud by concealment (Seventh Claim).  Ample authority from this Court and others in the Circuit holds that where a complaint fails to state a claim for federal securities fraud, claims for state securities fraud and common-law fraud predicated on identical allegations necessarily fail.

For example, in *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234 (N.D. Cal. 2014), this Court explained its dismissal of claims under California Corporations Code § 25401 after it had concluded the plaintiff failed to state a claim for federal securities fraud:

> Plaintiff's sixth cause of action is for violations of California Corporations Code section 25401 . . . .  The Court agrees with Defendants that Plaintiff's inability to state a claim for fraud under Section 10b–5 is also fatal to his § 25401 claims. *See Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063 (N.D. Cal. 2013) (finding that a Plaintiff unable to state a claim under 10b–5 was also unable to state a claim under § 25401, because both statutes required the Court to engage in the same factual inquiry).

*Id.* at 1252; *see also Wallack v. Idexx Labs., Inc.*, No. 11-cv-2996-GPC (KSC), 2013 WL 5206190, at *12 (S.D. Cal. 2013) (concluding that "failure to plead with requisite

particularity factual and evidentiary allegations which would create an inference that Defendants made false statements" was a "requisite element" of both federal and state securities claims).

The court in *Wallack* employed the same logic to dismiss a claim for fraudulent concealment under California law, reasoning: "Underlying this cause of action are the same alleged misleading facts alleged in the federal and state securities fraud causes of action. Since Plaintiff has not sufficiently pled a false statement under Rule 9(b) in the federal and state securities fraud causes of action, this claim also fails." 2013 WL 5206190, at *13; *see also Jackson*, 931 F. Supp. 2d at 1060, 1067 (dismissing claim for alleged violation of § 10(b) and Rule 10b–5 and claim for common-law fraud for same reason: lack of particularity); *Donovan v. Flamingo Palms Villas, LLC*, No. 2:08-CV-01675-RCJ-RJJ, 2009 WL 10693913, at *8, *11 (D. Nev. June 23, 2009) (dismissing alleged violations of federal securities laws and fraud by concealment under California law for lack of particularity).

Accordingly, as plaintiff relies on the same defective allegations of the federal securities causes of action, its state-law claims should be dismissed.

## **CONCLUSION**

For the reasons stated above, OZY respectfully requests that the Court dismiss the FAC with prejudice and award OZY any applicable attorneys' fees and costs.

DATED: January 7, 2022                Respectfully submitted,

DELAHUNTY & EDELMAN LLP
By: _____ */s/ William J. Edelman* _____
         PATRICK R. DELAHUNTY, SBN 257439
         pdelahunty@delawllp.com
         WILLIAM J. EDELMAN, SBN 285177
         wedelman@delawllp.com

         *Attorneys for Defendant Ozy Media, Inc.*