KEVIN J. O'BRIEN (NY Bar 1673847)
kobrien@fordobrien.com
(*pro hac vice forthcoming*)
ALEXANDER SHAPIRO (NY Bar 2466225)
ashapiro@fordobrien.com
(*pro hac vice forthcoming*)
STEPHEN R. HALPIN III (DC Bar 1048974)
shalpin@fordobrien.com
(*pro hac vice forthcoming*)
FORD O'BRIEN LLP
575 5th Ave, 17th Floor
New York, NY 10017
Telephone:    212-858-0040
Facsimile:    212-256-1047

WILLIAM J. EDELMAN (SBN 285177)
wedelman@delawllp.com
PATRICK R. DELAHUNTY (SBN 257439)
pdelahunty@delawllp.com
DELAHUNTY & EDELMAN LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:    415-891-6210
Facsimile:    415-891-6256

Attorneys for Defendant
OZY Media, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFELINE LEGACY HOLDINGS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>OZY MEDIA, INC., a Delaware corporation; SAMIR RAO, an individual; CARLOS WATSON, an individual,<br><br>Defendants. | Case No: 21-cv-07751-BLF<br><br>**DEFENDANT OZY MEDIA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Hearing:   May 5, 2022<br>Time:      9:00 a.m.<br>Location:  Courtroom 3 – 5th Floor<br><br>Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   INTRODUCTION ............................................................................................................ 1

II.  ARGUMENT .................................................................................................................... 2

   A. The FAC Fails to Allege an Actionable Omission or Misrepresentation ............... 2
   B. The FAC Fails to Establish a Strong Inference of Scienter. ................................... 7
   C. LifeLine Is Not Entitled to a Legal Presumption of Reliance. ............................... 8
   D. LifeLine Has Not Shown Economic Loss or Loss Causation. ............................... 9
   E. The Court Should Deny LifeLine's Request for Leave to Amend. ...................... 11

III. CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
   512 F.3d 46 (1st Cir. 2008) ..............................................................................................13

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972) ....................................................................................................8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................4, 5

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ............................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................................4

*Doe v. Uber Techs., Inc.*,
   184 F. Supp. 3d 774 (N.D. Cal. 2016) ..........................................................................3, 4

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ........................................................................................1, 2

*Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004) ............................................................................................5

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) (en banc) ..........................................................................3

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021),
   *cert. petition docketed* No. 21-594 (U.S. Oct. 21, 2021) ..............................................4, 5

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ........................................................................................1, 2

*In re Verity Health System of California, Inc.*,
   No. 2:18-bk-20151-ER, 2019 WL 9104240 (C.D. Cal. Bankr. Nov. 27, 2019) ................6

*In re VISX, Inc. Sec. Litig.*,
   No. C 00-0649 CRB, 2001 WL 210481 (N.D. Cal. Feb. 27, 2001),
   *aff'd sub nom. Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ....................................................................................12, 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   2 F.4th 1199 (9th Cir. 2021) ............................................................................................9

*Kader v. Sarepta Therapeutics, Inc.*,
   887 F.3d 48 (1st Cir. 2018) ..................................................................................................13

*Johnson v. Cty. of Santa Clara*,
   No. 5:18-CV-06264-EJD, 2020 WL 870933 (N.D. Cal. Feb. 21, 2020) ...................................5

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008)............................................................................................11, 12

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005)...................................................................................................11

*Lopez v. CTPartners Executive Search Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016) ........................................................................................5

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................................................ *passim*

*Oracle Partners, L.P. v. Concentric Analgesics, Inc.*,
   No. 20-CV-03775-HSG, 2021 WL 2322351 (N.D. Cal. June 7, 2021) .................................10

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp.*,
   774 F.3d 598 (9th Cir. 2014)...................................................................................................10

*Prodanova v. H.C. Wainwright & Co.*,
   993 F.3d 1097 (9th Cir. 2021)..................................................................................................8

*Retail Wholesale & Department Store Union Local 338
Retirement Fund v. Hewlett–Packard Co.*,
   52 F. Supp. 3d 961 (N.D. Cal. 2014),
   *aff'd*, 845 F.3d 1268 (9th Cir. 2017) ........................................................................................5

*RG Steel, LLC v. Severstal U.S. Holdings, LLC*,
   993 F. Supp. 2d 370 (S.D.N.Y. 2014) ......................................................................................6

*Singh v. U.S. Citizenship & Immigr.*,
   No. C 06-7189 JL, 2009 WL 10697761 (N.D. Cal. May 28, 2009)..........................................12

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008)....................................................................................................8

*Stimac v. Wieking*,
   785 F. Supp. 2d 847 (N.D. Cal. 2011).....................................................................................12

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp.*,
   No. CIV 06-02674-PHX-RCB, 2011 WL 1253250 (D. Ariz. Mar. 31, 2011).........................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................................................................8

Def.'s Reply in Supp. of Mot. to Dismiss Pl.'s First Am. Compl.
Case No. 21-cv-07751-BLF, Page iv of v

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
   No. 19 C 3648, 2020 WL 564222, at *12 (N.D. Ill. Feb. 5, 2020) .........................................6, 7

*Veal v. LendingClub Corp.*,
   No. 18-CV-02599-BLF, 2020 WL 3128909 (N.D. Cal. June 12, 2020),
   *aff'd*, No. 20-16603, 2021 WL 4281301 (9th Cir. Sept. 21, 2021)..............................................8

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) ....................................................................................5, 8

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
   655 F.3d 1039 (9th Cir. 2011),
   *abrogated in part by Lorenzo v. Sec. & Exch. Comm'n*,
   139 S. Ct. 1094 (2019) .........................................................................................................10, 11

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)....................................................................................................11

**Rules and Statutes**

Rule 9(b) of the Federal Rules of Civil Procedure ...................................................................4, 10

15 U.S.C. § 78u–4(b)(1) ..............................................................................................................3, 5

Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b)................................10

## I.  INTRODUCTION

This Court need look no further than the Table of Authorities in LifeLine's Opposition to OZY's Motion to Dismiss ("Opposition" or "Opp.") [ECF No. 37] to recognize how deficient Plaintiff's arguments are. Nowhere to be found on that list are the controlling Ninth Circuit cases on which OZY's Motion is based, such as *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008), *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008), and *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012). LifeLine acts as if these authorities do not exist, just as the First Amended Complaint ("FAC") [ECF No. 18] reads as if the PSLRA never passed Congress. LifeLine's strategy of avoidance rather than engagement confirms the failings of its case.

Even more telling, however, is that LifeLine's Opposition concedes three key points made in OZY's Motion ("OZY Mot.") [ECF No. 31].

First, OZY's Motion explains how LifeLine is contractually bound by the integration clauses in the Stock Purchase Agreements ("SPAs"), whereby LifeLine waived reliance on any representations other than those expressly stated in the SPAs. In the FAC, LifeLine based its theory of fraud and reliance not only on the SPAs but also on "direct assurances from Watson and Rao concerning Ozy Media's strong business performance, investments by high profile institutional investors, high viewer metrics, and competent and honest company management," all of which were allegedly made during a series of communications leading up to LifeLine's investments. *See* FAC ¶ 5; *see also id.* ¶¶ 14, 30. In its Opposition, however, LifeLine has jettisoned any theory of reliance on those allegedly false oral and written statements made to it during the due diligence process. *See, e.g.*, Opp. at 4 ("[T]he FAC adequately alleges securities fraud claims against Defendants based on actionable omissions by Defendants that rendered representations in the SPAs false or misleading."). Thus, all that remains of LifeLine's case are the representations and warranties in the Series C and Series D SPAs.

Second, as explained in OZY's Motion to Dismiss, LifeLine's allegations of motive do not pass muster under the PSLRA because allegations of "routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege

scienter." *See* OZY Mot. at 18–19 (citing *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012), among other authorities). Moreover, personal profit motives that are present in almost every corporate transaction favoring the company are likewise insufficient. *See Glazer*, 549 F.3d at 748. LifeLine's Opposition reveals that its theory of motive amounts to nothing more than such "routine corporate objectives." LifeLine argues that "[t]he allegations of scienter set forth . . . show at least 2.5 million pecuniary motives for not disclosing Rao's [alleged] misconduct," and that as officers and investors in OZY, Watson and Rao had "personal final [sic] stakes in Ozy Media." Opp. at 13. The Ninth Circuit has squarely rejected this theory of motive in numerous decisions, and LifeLine points to no authority in this Circuit that states otherwise.

Third, LifeLine acknowledges that no fiduciary relationship existed between OZY and LifeLine that would give rise to an independent duty to disclose. Contending that OZY mischaracterized its claims, LifeLine plainly asserts in the Opposition that "[t]he FAC does not allege that Defendants owed a duty to Plaintiff to disclose" the Rao incident. *See* Opp. at 4. But LifeLine appears to have forgotten that its Seventh Claim for Relief (Fraud by Concealment) is predicated on just such a theory. *See* FAC ¶ 61 ("Pursuant to the Stock Repurchase [sic] Agreements, a fiduciary and confidential relationship existed between Defendants, and each of them, and Plaintiff."). LifeLine has evidently now abandoned this argument, and thus tacitly concedes that its Fraud by Concealment count must be dismissed.

For these reasons and all those addressed herein and in the original Memorandum of Law in support of OZY's Motion to Dismiss, LifeLine's FAC should be dismissed with prejudice and without leave to amend.

## II.     ARGUMENT

### A. The FAC Fails to Allege an Actionable Omission or Misrepresentation.

In its Motion to Dismiss, OZY argued that the FAC's theory is founded entirely on the unsupported assumption that the isolated Rao incident with Goldman translated into a violation of law *by the Company* and by implication a fraud on LifeLine. The Motion set forth at least three reasons why that assumption was legally and logically improper. *See* OZY Mot. 9–13.

1. First, the FAC assumes without support that Rao was acting within the scope of his employment with OZY in attempting to impersonate a YouTube executive, and that his conduct could therefore be imputed to the Company. Second, a government investigation—assuming one existed prior to the signing of the SPAs—does not equate to a violation of law. And, finally, any adverse impact on the Company's reputation arising from the later disclosure of the Rao incident by the press does nothing to prove that the warranties in the SPAs were false when made. LifeLine addresses only the first of these reasons, leaving the second two unrebutted. But even the argument it does raise is mistaken.

LifeLine reasons that OZY's failure to disclose Rao's conduct, rather than the conduct itself, underlies its fraud claim based on the SPAs' warranty of legality in Section 3.11. This is illogical. The representation in the two SPAs was that "[t]o the Company's knowledge, the Company is not in violation of any federal or state statute, rule or regulation applicable to the Company." Edelman Decl. Exs. B & C § 3.11 [ECF No. 33]. For the statement in Section 3.11 to be false or misleading, "the Company" must have been in violation of a law at the time it executed the SPAs. The factual predicate, then, that would render such a statement false is not a failure to disclose, but a circumstance establishing that the Company was in fact in violation of a law. But if Rao's conduct was an *ultra vires* act, then there can be no *respondeat superior* obligation of the Company, and the Company did not violate the law. It is this crucial logical step that LifeLine misses in its pleading. LifeLine's apparent confusion about what needs to be false to state a claim stems from its own failure to plead its fraud theory with the necessary particularity. Nowhere, for example, does LifeLine allege (nor attempt to clarify in its Opposition) exactly what "federal or state statute, rule or regulation" is supposedly at issue. LifeLine accordingly has failed to adequately plead "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1).

The two cases LifeLine cites in connection with this argument do not state otherwise. The first, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990) (en banc), which OZY also cited in its Motion, merely acknowledges that the common law doctrine of *respondeat superior* applies in securities fraud cases. *Id* at 1576–78. The second citation, *Doe v. Uber*

*Techs., Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016), has little relevance here.  In the first place, it is a tort case that was analyzed under standard Rule 8(a) considerations, not the heightened particularity requirements of Rule 9(b) and the PSLRA.  *See id.* at 780–81.  But under any standard, the principle in that case on which LifeLine relies—namely that "the determination whether an employee has acted within the scope of employment presents a question of fact," *id.* at 786 (citation omitted); Opp. at 9—does not mean that LifeLine's conclusory say-so in the FAC is enough to dodge a motion to dismiss.  To the contrary, federal court pleadings are still bound by the bedrock Supreme Court decisions in *Iqbal* and *Twombly*—to say nothing of the heightened standards that apply in securities fraud cases—which stand for the proposition that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Even in LifeLine's case *Doe v. Uber Techs.*, this Court denied the motion to dismiss only once it was satisfied that the plaintiff had "*plausibly* alleged that [the Uber] drivers . . . were acting within the scope of employment when they assaulted plaintiffs."  184 F. Supp. 3d at 786 (emphasis added).

       There are no such plausible allegations here.  LifeLine's contention that Rao was acting within the scope of his employment when he impersonated a YouTube executive, simply because he was authorized to solicit investments on behalf of OZY, entirely misconstrues the law on *respondeat superior*.  As *Doe* details, the doctrine incorporates, among other considerations, a "foreseeability analysis" that inquires as to the relationship between "the nature of the work involved" and the "type of tort committed," and whether such tort "in the context of the particular enterprise . . . is . . . unusual or startling."  *Id.* at 784 (citations omitted).

       The same principle holds true with respect to LifeLine's claim that it need not establish that the omission it pleads is material, as that is a question "for the trier of fact."  *See* Opp. at 8.  Once again, as the Ninth Circuit's analysis in LifeLine's own authority *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021), *cert. petition docketed* No. 21-594 (U.S. Oct. 21, 2021), makes clear, a plaintiff's theory of materiality must meet a plausibility standard to survive a

motion to dismiss.  *See id*. at 703 ("The complaint *plausibly* alleges that Alphabet's omission was material." (emphasis added)); *see also Iqbal*, 556 U.S. at 679.

Apart from this flimsy response, LifeLine has nothing to say about the other two key points in OZY's Motion.  First, the mere existence of a government investigation is not sufficient to prove wrongdoing for purposes of a securities fraud claim under the PSLRA.  As the Ninth Circuit in *Metzler*, and this Court in *Veal*, have recognized, a plaintiff cannot leverage a claim of fraud simply on the initiation of a government investigation.  *Metzler*, 540 F.3d at 1070–71; *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019).  If pleading a securities claim were that easy, every company subject to government inquiry would automatically become liable to its investors.  That is not the law.

Second, even if the public may at a later point respond negatively to information omitted from disclosure, that does not mean that the omission becomes actionable by hindsight.  *See Retail Wholesale & Department Store Union Local 338 Retirement Fund v. Hewlett–Packard Co.*, 52 F. Supp. 3d 961, 967 (N.D. Cal. 2014), *aff'd*, 845 F.3d 1268 (9th Cir. 2017); *Lopez v. CTPartners Executive Search Inc.*, 173 F. Supp. 3d 12, 29 (S.D.N.Y. 2016); *see also Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004).

For the first time, LifeLine's Opposition identifies three more representations in the SPAs as grounds for its claim of fraudulent misrepresentation.  As a threshold matter, the Court should not even consider these new theories because the PSLRA requires that a "plaintiff's *complaint* 'shall specify each statement alleged to have been misleading,'" *Metzler*, 540 F.3d at 1070 (emphasis added) (quoting 15 U.S.C. § 78u–4(b)(1)).  A plaintiff cannot get around this requirement by constructively amending its complaint with new allegations in an opposition to a motion to dismiss.  *See, e.g.*, *Johnson v. Cty. of Santa Clara*, No. 5:18-CV-06264-EJD, 2020 WL 870933, at *6 (N.D. Cal. Feb. 21, 2020).  In any event, the Opposition's perfunctory recitation of these three SPA provisions fails to convince.

Two of the three relate to a "Material Adverse Effect":  Section 3.6(n) of the SPAs states that "there has not been . . . to the Company's knowledge, any other event or condition of any character that might result in a Material Adverse Effect," and Section 3.12 states that there are

"no actions, suits, proceedings or investigations pending" that "would or could reasonably be expected to have a Material Adverse Effect . . . ." See Edelman Decl. Exs. B & C. Section 3.1 defines "Material Adverse Effect" as "a material adverse effect on the Company's financial condition or business as now conducted." *Id.*

As one court in the Central District of California has elaborated in analogous circumstances, a "Material Adverse Effect clause" is designed to protect a party to the contract "from the occurrence of unknown events that substantially threaten the overall earnings potential of the [company] in a durationally-significant manner. A short term hiccup in earnings should not suffice." *See In re Verity Health System of California, Inc.*, No. 2:18-bk-20151-ER, 2019 WL 9104240, at *4–5 (C.D. Cal. Bankr. Nov. 27, 2019) (citation omitted) (invoking Delaware Chancery caselaw because "California law on the meaning of a material adverse effect clause . . . is not well developed"). The Opposition does not define the nature of any Material Adverse Effect that would render the foregoing representations false, and neglects to explain how such a Material Adverse Effect could have been within Watson's "reasonable expectation" at the time he signed the SPAs. As explained at length in OZY's Motion, the FAC cannot make a plausible case for the falsity of the foregoing representations based solely on the Rao incident and a theoretical government investigation.

As for the third newly referenced provision of the SPAs, the Opposition fails to establish that Rao's highly irregular and isolated conduct during a single phone call rose to the level of a failure on the part of OZY "to conduct business in the ordinary course, consistent with the Company's past practices" such that the unaudited financial statements provided to investors would be rendered materially incorrect. *See* Edelman Decl. Exs. B & C §§ 3.5, 3.6(m); *see also RG Steel, LLC v. Severstal U.S. Holdings, LLC*, 993 F. Supp. 2d 370, 377–78 (S.D.N.Y. 2014) (holding that failure to disclose loss of favorable fixed-price contract provision leading to aggregate price increase of $80.7 million over term of contract was not material change in certain business and payment practices sufficient to render false representation about conduct of business "in the ordinary course"); *Twin Master Fund, Ltd. v. Akorn, Inc.*, No. 19 C 3648, 2020 WL 564222, at *12 (N.D. Ill. Feb. 5, 2020) (concluding that

plaintiffs had "not adequately alleged that [company's] commitment to operate 'in the ordinary course of business' was an actionable misrepresentation" because plaintiffs failed to explain "what exactly a reasonable investor would have understood this representation to mean, beyond [the company's] commitment to simply continue to operate as a going concern"). The Opposition merely sets the Rao incident side by side with the representation, without adequately alleging why Rao's conduct should be imputed to the Company as noted above, and without explaining "the reason or reasons why the statement [in Section 3.6(m)] is misleading." *See Metzler*, 540 F.3d at 1070.

### B. The FAC Fails to Establish a Strong Inference of Scienter.

With respect to scienter, LifeLine's arguments once again miss the mark. Despite having waived its reliance on oral and written representations outside the four corners of the SPAs, LifeLine continues to argue that Rao made material omissions when he "continued to solicit Plaintiff's investment in Ozy Media through numerous electronic and telephonic communications." *See* Opp. at 10. Even assuming that the integration clauses in the SPAs are not operative, this argument does not excuse the FAC's lack of specificity in detailing any actual statements predating the signing of the SPAs that were rendered misleading by the omission. A bare allegation vaguely referencing "numerous electronic and telephonic communications" clearly does not satisfy the PSLRA's pleading standards. LifeLine's continued reliance on such cursory allegations after being confronted with the requirements of the PSLRA in OZY's Motion borders on the frivolous.

As for Watson, LifeLine posits that he signed the SPAs "with knowledge of Rao's conduct . . . and government investigation into Ozy Media." Opp. at 11. LifeLine boasts that this allegation is "very strong," but fails to engage with OZY's arguments that conclusively demonstrate why it is not.

As an initial matter, OZY explained in its Motion that the October 5, 2021 radio interview referenced in the FAC does not support the allegation that a government investigation had been initiated prior to either of LifeLine's investments, let alone that OZY knew of any such investigation at that time. *See* OZY Mot. at 10 n.2. LifeLine does nothing to counter this fact in

its Opposition and offers no additional basis for support. The Court should disregard such speculative allegations regarding the timing and knowledge of a government investigation. *See Veal v. LendingClub Corp.*, No. 18-CV-02599-BLF, 2020 WL 3128909, at *4, *7–8 (N.D. Cal. June 12, 2020), *aff'd*, No. 20-16603, 2021 WL 4281301 (9th Cir. Sept. 21, 2021).

Regardless, even if Watson were aware of Rao's conduct *and* of a government investigation, these facts would still be insufficient to establish knowledge that the Company had engaged in a violation of the law. As discussed above, that Rao may have engaged in misconduct does not mean that the Company is liable for that conduct, nor does it follow that the entire Company's operations and financials are founded on fraud. And with respect to the purported investigation, LifeLine fails to establish at a minimum: (1) *when* the government investigation began; (2) *what* the substance of that investigation was; and (3) *if and when* the government informed the Defendant—here, Watson—that the Company was in violation of the law for the conduct alleged, all requirements of this Court for a PLSRA pleading that purports to rely on a government investigation as proof of scienter. *See Veal*, 423 F. Supp. 3d at 806.

LifeLine's citation to the Ninth Circuit's decision in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008), does nothing to advance its argument here. *South Ferry* merely stands for the proposition that a "core operations" theory, while generally insufficient to establish scienter, can still be considered as part of the total mix of information informing the scienter analysis under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). *South Ferry*, 542 F.3d at 784. But the FAC does not even articulate a core operations theory of scienter, focusing instead on the direct knowledge of Watson as signer of the SPAs. As explained above, even accepting as true the allegation that Watson knew of the Rao incident, the FAC still fails to adequately plead scienter.

Finally, as explained in the Introduction, LifeLine has offered no viable theory of motive. *See, e.g.*, *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021).

**C.  LifeLine Is Not Entitled to a Legal Presumption of Reliance.**

LifeLine's argument that it is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), does not withstand scrutiny. As the

Ninth Circuit recently clarified in a case that LifeLine fails to cite—and which effectively supersedes the Court's reasoning in the almost fifty-year old, pre-PSLRA case that Plaintiff does cite, *see* Opp. at 13–14 (citing *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975))—the *Affiliated Ute* presumption applies only "under certain limited circumstances." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2 F.4th 1199, 1203 (9th Cir. 2021). In this 2021 case, the Circuit distinguished between "pure omissions" cases, which are entitled to the presumption, and "mixed" cases that allege both omissions and affirmative misrepresentations, for which the presumption does not apply. *Id*. at 1204 (citation omitted).

LifeLine's case unquestionably falls in the second category. Indeed, LifeLine stresses throughout its Opposition that it is *not* pursuing a "pure omissions" theory. *See, e.g.*, Opp. at 1 ("the FAC is properly framed as alleging claims based on omissions that rendered affirmative misrepresentations false or misleading"); *id.* at 4 ("Defendants mischaracterize the gravamen of the FAC as alleging claims for fraud by pure omission."). LifeLine's sole argument is that certain representations in the SPAs were rendered false or misleading because of the omission of certain information. But the *Affiliated Ute* presumption does not apply where *affirmative* statements are allegedly rendered false by omission.

In the *Volkswagen* case, for example, the Ninth Circuit encountered a fact scenario, similar to this case, in which an "omission loom[ed] large over Plaintiff's claims." *See* 2 F.4th at 1206. Volkswagen had "failed to disclose—for years—it was secretly installing defeat devices in its 'clean diesel' line of cars to mask unlawfully high emissions from regulators and cheat on emissions tests." *Id.* But because the plaintiff in purchasing its bonds had relied on affirmative representations by the company that allegedly were rendered misleading by the omission, the Ninth Circuit concluded that the case fell "outside *Affiliated Ute*'s narrow presumption." *Id.* (citation omitted). The *Volkswagen* case controls here, and LifeLine thus has no basis to invoke a presumption of reliance.

### D. LifeLine Has Not Shown Economic Loss or Loss Causation.

In Section IV.E of its Opposition, "The FAC Adequately Alleges Causation," LifeLine runs together three distinct elements of a securities fraud claim: "in connection with," "economic

loss," and "loss causation."  *Compare* Opp. at 4 (setting forth the six distinct elements of a securities fraud claim), *with id.* at 14–18.  OZY attempts here to disentangle the confusing threads of LifeLine's argument.

In its First Claim for Relief against OZY, LifeLine seeks to set aside the SPAs under Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b).  FAC ¶ 32.  The parallel Fourth Claim seeks the same relief under a state-law theory of liability.  *Id.* ¶ 49.  As LifeLine states in the FAC and its Opposition, the damages alleged in these two Claims against the Company are "rescissory" in nature:  LifeLine seeks to undo the agreements and to recoup the funds invested.  OZY does not question this basic principle of rescission.  Instead, the First and Fourth Claims for Relief against OZY warrant dismissal because they fail to plead with particularity any actionable misrepresentation or scienter.

With respect to the remaining Claims for Relief against Rao and Watson, LifeLine seeks an "out-of-pocket" measure of damages, and as to these claims LifeLine not only fails to establish an actionable misrepresentation or scienter but also fails to plead economic loss and loss causation with the requisite particularity required under Rule 9(b) and the PSLRA.  *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 605 (9th Cir. 2014) ("We . . . hold today that Rule 9(b) applies to all elements of a securities fraud action, including loss causation.").  LifeLine claims that it need not "quantify the loss of out-of-pocket damages with precision."  Opp. at 18.  Even if that statement were true as a matter of law, LifeLine must allege *some* measurable decrease in the value of its investments.  *See Oracle Partners, L.P. v. Concentric Analgesics, Inc.*, No. 20-CV-03775-HSG, 2021 WL 2322351, at *7 (N.D. Cal. June 7, 2021) ("Plaintiffs . . . have not pled economic loss with sufficient particularity to plausibly establish the existence and magnitude of any claimed loss.").  Here, LifeLine fails to plausibly allege with particularity any decline in the value of its shares.

The two cases on which LifeLine relies are readily distinguishable because in each instance the company at issue went under, thus making the scope of damages concrete.  In *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, the shares at issue, according to the complaint, "*immediately became worthless.*"  655 F.3d 1039, 1054 (9th Cir. 2011) (emphasis

added), *abrogated on other grounds by Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094 (2019).  By the same token, in *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, the company went bankrupt, causing plaintiff "*to lose the entire value* of its investment."  416 F.3d 940, 949 (9th Cir. 2005) (emphasis added) (citations omitted).  In other words, in both *WPP* and *Livid*, plaintiffs alleged a demonstrable loss—that their investments had become worthless once the alleged fraud was uncovered—in contrast to the FAC where LifeLine pleads only a *method* of calculating loss (i.e., the difference between purchase price and the value of the shares after any alleged fraud became known), without adequately alleging any basis for concluding that such a calculation here would yield any loss at all.  *See* FAC ¶¶ 38, 44.

LifeLine's contentions on loss *causation* fail for similar reasons.  As the Ninth Circuit in *Metzler* teaches, a plaintiff alleging securities fraud must plead a clear connection between the fraud alleged and the purported decline in share value.  540 F.3d at 1063–64.  Thus, even assuming that LifeLine had adequately alleged a loss in the value of the shares it purchased—which, as explained above, it has not—LifeLine has not plausibly pled with particularity that the fraud alleged here (a violation of law by the Company) was the cause of any such decline in the value of LifeLine's investments, as opposed to share value fluctuations based on other market forces.  The *New York Times* article does not shed any light on the truth or falsity of the SPA warranties, nor does the existence of a government investigation compel the conclusion that the Company violated the law.  As *Metzler* makes clear, loss causation is not pled where a disclosure to the market reveals only a "'*risk*' or '*potential*' for widespread fraudulent conduct."  *Id.* at 1064 (emphases added).  The FAC fails to plead loss causation.

### E. The Court Should Deny LifeLine's Request for Leave to Amend.

LifeLine maintains that if the FAC is dismissed, it should be granted leave to amend.  *See* Opp. at 18–20.  This Court may exercise its discretion to deny leave to amend "due to 'undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'"  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

(9th Cir. 2008)).  Here, because LifeLine had ample opportunity in the first two iterations of its complaint to make a complete claim that meets the requirements of the PSLRA, and any further amendment would in any event be futile, its request for leave to amend should be denied. Although prejudice to the opposing party is an important factor, futility of amendment alone can justify denial of amendment.  *Stimac v. Wieking*, 785 F. Supp. 2d 847, 854 (N.D. Cal. 2011).

At the outset it bears noting that LifeLine's request is procedurally deficient.  This Court's Local Rule 10-1 requires: "Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading[.]"  LifeLine has neither filed a separate motion nor attached a proposed second amended complaint to its Opposition pursuant to Local Rule 10-1. Courts in this Circuit have found such halfway measures inadequate.  *See Singh v. U.S. Citizenship & Immigr.*, No. C 06-7189 JL, 2009 WL 10697761, at *5 (N.D. Cal. May 28, 2009) ("In evaluating Plaintiff's request for leave to amend, the Court can only speculate as to the form an amended Complaint might take because Plaintiff failed to accompany his request with a draft of his proposed pleading, as required by Civil Local Rule 10-1."); *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp.*, No. CIV 06-02674-PHX-RCB, 2011 WL 1253250, at *37 n.28 (D. Ariz. Mar. 31, 2011).

As explained above, the Court should disregard LifeLine's attempts to reshape its claims through new allegations appearing for the first time in its Opposition; but even if these *sub-rosa* additions were included in a second amended complaint, any such amendment would be futile. *See supra* Part A; *see also In re VISX, Inc. Sec. Litig.*, No. C 00-0649 CRB, 2001 WL 210481, at *11 (N.D. Cal. Feb. 27, 2001) (dismissing without leave to amend where the Court considered "allegations in plaintiffs' Opposition [that] went well beyond those in the Complaint" but the allegations still did not satisfy the PSRLA's pleading requirements), *aff'd sub nom. Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002); *see also Apollo Grp.*, 2011 WL 1253250, at *37 (dismissing without leave to amend where, "in contrast to many securities fraud cases, plaintiff's allegations herein are not based upon the statements of confidential witnesses and/or employees and former employees" (citation omitted)).

Courts have also denied leave to amend where the request to amend reflected a lack of diligence by failing to include allegations and theories that were available at the time of earlier pleadings. *See, e.g.*, *Metzler*, 540 F.3d at 1072 (affirming denial of dismissal with prejudice, noting that the plaintiff "point[ed] to no additional facts that it might allege to cure these deficiencies, which persisted in every prior iteration of the [complaint]" (citation omitted)). The First Circuit, in particular, has "explicitly condemned a 'wait and see' approach to pleading, whereby plaintiffs 'having the needed information, deliberately wait in the wings . . . with another amendment to a complaint should the court hold the first amended complaint was insufficient.'" *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018) (affirming denial of leave to amend PSLRA complaint on undue delay grounds) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008)). "[P]laintiffs do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint was adequate under the PSLRA." *ACA Fin.*, 512 F.3d at 57.

This case turns solely on alleged misrepresentations in two contracts that LifeLine signed in February and May 2021. As a legal matter, by operation of the integration clauses in those agreements, these contracts are the entire case, and LifeLine has known about them from the start. But only now in its Opposition does LifeLine point to additional provisions in those agreements. There is no legitimate reason why LifeLine could not have pled all the provisions in its original Complaint or in its FAC. Apparently, LifeLine fears that its sole reliance on Section 3.11 in the FAC is no longer tenable.

As a last gasp argument, LifeLine quotes a Ninth Circuit opinion to the effect that the PSLRA "is not an easy standard to comply with" and that "in this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *See* Opp. at 19 (citation omitted). But in this particular context, such a plaintive entreaty fails to persuade. As OZY noted in its Motion, the FAC was drafted with complete disregard for the demanding requirements of the PSLRA. And in its Opposition, LifeLine makes no attempt to address and/or distinguish controlling authority from the Ninth Circuit and persuasive authority from this Court. LifeLine's claim of entitlement to an amendment thus rings hollow, particularly

given that LifeLine's counsel markets themselves as having "significant experience representing clients in all facets of securities class actions [and] shareholder litigation." *See* Blank Rome, Securities & Shareholder Litigation, https://www.blankrome.com/services/litigation/securities-shareholder-litigation#overview (last accessed Jan. 28, 2022). This Court has not hesitated to dismiss a securities complaint without leave to amend where plaintiffs were "represented by experienced securities fraud class action counsel who are intimately familiar with the PSLRA and the Ninth Circuit's stringent interpretation of its pleading standards" yet failed to meet those standards. *See In re VISX, Inc. Sec. Litig.*, 2001 WL 210481, at *11. The same result should follow here.

### III. CONCLUSION

For the reasons herein as well as those in OZY's Motion, the Company respectfully requests that the Court grant the Motion and dismiss the FAC, with prejudice.

DATED: January 28, 2022          Respectfully submitted,

                                          DELAHUNTY & EDELMAN LLP
                                          By:       */s/ William J. Edelman*
                                                  WILLIAM J. EDELMAN, SBN 285177
                                                  wedelman@delawllp.com
                                                  PATRICK R. DELAHUNTY, SBN 257439
                                                  pdelahunty@delawllp.com

                                                  *Attorneys for Defendant Ozy Media, Inc.*