```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4
     LIFELINE LEGACY HOLDINGS, LLC,    )  CV-21-07751-BLF
 5                                     )
                      PLAINTIFF,       )  SAN JOSE, CALIFORNIA
 6                                     )
                 VS.                   )  MAY 4, 2022
 7                                     )
     OZY MEDIA ET AL,                  )  PAGES 1-20
 8                                     )
                      DEFENDANT.       )
 9                                     )
     _____  )
10
                    TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE BETH LABSON FREEMAN
                    UNITED STATES DISTRICT JUDGE
12

13                    A P P E A R A N C E S

14

15      FOR THE PLAINTIFF:     BY:  CHRISTOPHER JENS PETERSEN
                               BLANK ROME LLP
16                             2029 CENTURY PARK EAST, 6TH FLOOR
                               LOS ANGELES, CA 90067
17

18

19      FOR THE DEFENDANT:     BY:  ALEXANDER SHAPIRO
        OZY MEDIA               FORD O'BRIEN LANDY LLP
20                             275 MADISON AVE, STE FL. 24
                               NEW YORK, NY 10016
21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23      OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        APPEARANCES CONTINUED:

 2        FOR THE DEFENDANT:      BY:  AUGUST P. GUGELMANN
          RAO                     SWANSON & MCNAMARA LLP
 3                                300 MONTGOMERY STREET
                                  SUITE 1100
 4                                SAN FRANCISCO, CA 94104

 5        FOR THE DEFENDANT:      BY:  HARTLEY M.K. WEST
                                  DECHERT LLP
 6                                ONE BUSH STREET, SUITE 1600
                                  SAN FRANCISCO, CA 94104

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1            SAN JOSE, CALIFORNIA              MAY 4, 2022

2                     P R O C E E D I N G S

3       (COURT CONVENED AT 9:02 A.M.)

4            THE COURT:  GOOD MORNING, EVERYONE.  THANK YOU FOR

5       JOINING ON ZOOM.

6            WE ARE GOING TO CALL THE CASE, AND I WILL GET YOUR

7       APPEARANCES, THEN WE CAN GET STARTED.

8            THE CLERK:  CALLING CASE 21-7751 LIFELINE LEGACY

9       HOLDINGS VERSUS OZY MEDIA, ET AL.

10           COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES.  AND

11      IF WE CAN BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANTS.

12           MR. PETERSEN:  GOOD MORNING, YOUR HONOR.

13           CHRISTOPHER PETERSEN FROM BLANK ROME, FOR PLAINTIFF,

14      LIFELINE LEGACY HOLDINGS, LLC.

15           THE COURT:  GOOD MORNING.

16           MR. SHAPIRO:  GOOD MORNING, YOUR HONOR.

17           ALEXANDER SHAPIRO OF FORD O'BRIEN LANDY, LLP, FOR

18      DEFENDANT OZY MEDIA.

19           THE COURT:  GOOD MORNING.

20           MR. SHAPIRO:  GOOD MORNING, YOUR HONOR.

21           MR. GUGELMANN:  GOOD MORNING, YOUR HONOR.

22      AUGUST GUGELMANN FOR SAMIR RAO.

23           MS. WEST:  GOOD MORNING, YOUR HONOR.

24      HARTLEY WEST FOR DEFENDANT CARLOS WATSON.

25           THE COURT:  WELCOME.
```

1          ALL RIGHT.  THIS IS THE TIME SET FOR THE DEFENDANT'S

2     MOTION TO DISMISS.

3          MR. PETERSEN, I KNOW IT COMES AS NO SURPRISE TO YOU THAT

4     NORMALLY THE FIRST TIME THROUGH, WE WALK THROUGH THE THINGS

5     THAT ARE MISSING, AND THEN YOU GET ANOTHER SHOT AT IT, WHICH IS

6     EXACTLY WHERE I'M HEADED TODAY.

7          THIS IS A CASE UNLIKE ANY I'VE SEEN, I AM SURE THAT --

8     WELL, YOU HAVE MORE EXPERIENCE IN THE FIELD THAN I DO, BUT

9     THESE FACTS ARE CERTAINLY DIFFERENT.

10          I WANT TO TRY TO GIVE YOU A SENSE OF THE THINGS THAT I'M

11     CONCERNED ABOUT IN THE PLEADING.  AS ALWAYS, SCIENTER IS

12     USUALLY THE STICKING POINT, AND IT WAS INTERESTING TO ME THAT

13     YOU ARGUE THAT SCIENTER HERE IS CLEAR BECAUSE THE DEFENDANTS,

14     MR. RAO AND MR. WATSON, KNEW THAT MR. RAO WAS FAKING THE

15     YOUTUBE EXECUTIVE WHILE THEY WERE ON THE CALL.

16          I DON'T DISPUTE THAT, BUT THAT'S NOT THE FALSITY AT ISSUE

17     HERE, THE FALSITY AT ISSUE IS WHETHER THEY KNEW THAT THAT WAS A

18     VIOLATION OF THE REPS AND WARRANTIES, THAT THEY KNEW THAT THERE

19     WAS A VIOLATION OF LAW OR SOME OTHER IMPROPRIETY, AND THAT'S

20     WHERE THE SCIENTER, I THINK, IS MISSING.

21          IT'S -- YOU KNOW, I WON'T BE ABLE TO DETERMINE ON A MOTION

22     TO DISMISS, THE ISSUE OF MATERIALITY, I THINK, ALTHOUGH I KNOW

23     THAT MR. SHAPIRO WILL BE PUSHING ME ON THAT.

24          THIS WAS A CASE, AS I UNDERSTAND THE PLEADINGS, WHERE IT

25     WAS FIRST TOLD BY OZY THAT GOLDMAN SACHS WAS AN INVESTOR, OR A

1    POTENTIAL INVESTOR ALONG WITH JP MORGAN CHASE AND SOME OF THE

2    OTHERS, AND THEN BEFORE THIS INVESTMENT, I UNDERSTAND FROM THE

3    PLEADINGS, THAT OZY MADE CLEAR THAT GOLDMAN WAS NO LONGER AN

4    INVESTOR.

5        SO THEN THE QUESTION IS, DOES THE LAW SUPPORT A

6    REQUIREMENT UNDER AN OMISSIONS THEORY, THAT THE UNDERLYING

7    REASON FOR THE DISCLOSURE OF GOLDMAN AS NOT AN INVESTOR, IS

8    THAT REQUIRED TO BE DISCLOSED?

9        I DON'T KNOW OF ANY CASES THAT REQUIRES THAT.  AND I DON'T

10   KNOW WHAT LAW WAS VIOLATED.  I NEED YOU TO KIND OF EXPLAIN THAT

11   TO ME IN YOUR AMENDED PLEADING.

12       YOU KNOW, IT'S -- SOMETIMES THERE CAN BE THINGS THAT OUR

13   EYEBROWS JUMP OFF OUR HEADS BECAUSE IT'S SO SHOCKING THAT IT'S

14   DONE, BUT IT MIGHT ACTUALLY NOT BE A VIOLATION OF LAW.  I JUST

15   DON'T KNOW.  AND SO I'M SURE YOU CAN EXPLAIN THAT.

16       YOU ALSO ARGUE IN YOUR OPPOSITION, SEVERAL OTHERS OF THE

17   REPS AND WARRANTIES THAT YOU BELIEVE MAY HAVE BEEN VIOLATED,

18   BUT THEY AREN'T PLED.  SO I WILL OBVIOUSLY GIVE YOU AN

19   OPPORTUNITY TO DO THAT.  AND FRANKLY, ALTHOUGH THE PSLRA IS A

20   LITTLE TEDIOUS AT PLEADING STAGE, IT KIND OF GIVES US THE

21   OPPORTUNITY TO GET IT ALL LAID OUT.

22       ON THE ISSUE OF DAMAGES, YOU KNOW, I DON'T GET MANY

23   MOTIONS TO DISMISS THAT REALLY GO HARD ON THE DAMAGES, BECAUSE

24   NORMALLY IT'S A STOCK DROP CASE WITH A BEFORE-THE-DISCLOSURE

25   STOCK PRICE AND THEN AN AFTER-THE-DISCLOSURE STOCK PRICE, AND

1    WE CAN SEE IT AND THERE'S NOT MUCH TO TALK ABOUT.

2         THIS ONE IS DIFFERENT, AND MAYBE YOU CAN HELP ME TODAY TO

3    UNDERSTAND YOUR THEORY ON DAMAGES.  I UNDERSTAND THE RECISION

4    THEORY, THAT'S ACTUALLY NOT HARD, BUT IT'S THE DAMAGES THEORY

5    THAT I'M NOT SURE I UNDERSTAND.

6         AND SO -- AND HOW YOU'VE PLED THE THEORY OF DAMAGES ON

7    THAT ASPECT OF IT.  IF YOU ARE GOING TO PURSUE ONLY RECISION IN

8    THE FUTURE, THEN IT WON'T MATTER, AND I THINK THE DEFENDANTS

9    HAVE CONCEDED THAT THE RECISION THEORY IS ADEQUATELY PLED.

10        IF THIS IS A TWO-AND-A-HALF MILLION DOLLAR CASE, I'M GOING

11   TO SEND YOU TO THE BARGAINING TABLE AND HOPE YOU WORK IT OUT,

12   RATHER THAN SPENDING ALL THAT MONEY ON CLEANING UP THE

13   PLEADINGS, BUT I'M PRETTY SURE THAT'S PROBABLY NOT THE END OF

14   THE CASE.

15        SO I THINK THAT COVERS, AT A HIGH LEVEL, THE ISSUES THAT I

16   WAS CONCERNED ABOUT.  I'M SURE I HAVE MISSED SOME THINGS HERE.

17        I THINK THE BREACH OF FIDUCIARY DUTY ISSUE IS OFF THE

18   TABLE.  I THINK THAT'S BEEN -- THAT'S NOT ALLEGED, AND THE

19   DEFENDANTS JUST WANTED TO MAKE SURE THAT THAT WASN'T A THEORY

20   IN THE CASE.  SO LET ME LEAVE IT AT THAT, AND TURN THEN TO THE

21   DEFENDANTS.

22        I RECOGNIZE THAT MR. WATSON AND MR. RAO JOINED THE MOTION

23   TO DISMISS.  I DON'T KNOW WHETHER ALL THREE OF YOU WERE

24   PLANNING TO ARGUE IT OR JUST MR. SHAPIRO FOR THE ACTUAL MOVING

25   PARTY HERE.

1    SO I WILL TURN TO YOU.  AND MR. SHAPIRO, WERE YOU GOING TO

2    START THE ARGUMENT?

3         MR. SHAPIRO:  YES, YOUR HONOR.  I'M GOING TO TAKE THE

4    BULK OF THE ARGUMENT, AND THEN I UNDERSTAND THAT CO-COUNSEL MAY

5    HAVE SOME ADDITIONAL THINGS TO ADD, BUT I'M GOING TO CARRY THE

6    BURDEN OF THE ARGUMENT HERE TODAY.

7         THE COURT:  ALL RIGHT.  GOOD.

8    YOUR HONOR, YOU ALREADY LAID OUT, I THINK, THE PROBLEMS

9    WITH THE COMPLAINT.  SO I'M HAPPY TO ANSWER YOUR QUESTIONS, BUT

10   LET ME JUST STATE A COUPLE OF THINGS WHICH I THINK ARE CLEAR TO

11   THE COURT.  WHICH IS ONE, THAT THEY ARE NOT PURSUING THE

12   FIDUCIARY DUTY POINT ANYMORE, SO I THINK THAT'S OFF THE TABLE,

13   AS YOUR HONOR POINTED OUT.

14        IN ADDITION, IN THE COMPLAINT, AS ORIGINALLY DRAFTED,

15   THERE WERE ALLEGATIONS THAT ORAL REPRESENTATIONS AND

16   MISREPRESENTATIONS WERE MADE TO LIFELINE DURING THE COURSE OF

17   THE DUE DILIGENCE, AND IN LIGHT OF THE STOCK PURCHASE AGREEMENT

18   AND THE INTEGRATION CLAUSE, THAT THOSE ARE NO LONGER ALSO ON

19   THE TABLE, AND I BELIEVE THAT COUNSEL FOR PLAINTIFF HAS ALREADY

20   CONCEDED THAT IN THEIR PAPERS AS WELL.

21        SO I JUST WANTED TO MAKE IT CLEAR THAT ALL WE ARE TALKING

22   ABOUT RIGHT NOW ARE REPRESENTATIONS AND WARRANTIES, AS THE

23   COURT POINTED OUT, IN THE STOCK PURCHASE AGREEMENT, THE TWO

24   STOCK PURCHASE AGREEMENTS.

25        SO GIVEN THAT, WE ARE DOWN TO THE SIMPLE QUESTION, WHETHER

1    THE ONE REPRESENTATION IN THAT DOCUMENT, WHICH RELATES TO A

2    VIOLATION BY THE COMPANY OF STATE OR FEDERAL LAW, WHETHER THAT

3    WAS FALSE, AND RENDERED FALSE BY AN OMISSION.

4        AND I THINK WE'VE MADE CLEAR IN OUR PAPERS THAT THE FACT

5    THAT A SINGLE INCIDENT OF CORPORATE -- OF AN OFFICER

6    MISHANDLING A CALL WITH GOLDMAN SACHS, WAS NOT TANTAMOUNT TO A

7    CORPORATE VIOLATION OF LAW, NOR HAD PLAINTIFF ESTABLISHED THAT

8    CARLOS WATSON, WHO SIGNED THE DOCUMENT, HAD THE REQUISITE

9    SCIENTER AT THE TIME HE SIGNED THAT DOCUMENT AND HAD THE INTENT

10   TO DEFRAUD LIFELINE.

11       SO THAT'S THE CONNECTION THAT PLAINTIFF HAS FAILED TO MAKE

12   BETWEEN AN ISOLATED INCIDENT OF MISCONDUCT AND A CORPORATE

13   COMPANY VIOLATION AND SCIENTER, ON THE PART OF THE CEO WHO

14   SIGNED THOSE DOCUMENTS.

15       AND AGAIN, IT'S CLEAR UNDER THE NINTH CIRCUIT CASE LAW

16   THAT IT HAS TO BE THE INDIVIDUAL -- THE SCIENTER GOES TO THE

17   INDIVIDUAL WHO ACTUALLY MADE THE REPRESENTATION AND WHO

18   ACTUALLY SIGNED THE DOCUMENTS AT ISSUE HERE, WHICH IS

19   CARLOS WATSON.

20       SO REALLY, MR. RAO, HIS STATEMENTS ARE NOT AT ISSUE IN THE

21   COMPLAINT AS DRAFTED AND AS WE'VE ARGUED IT, IT SOLELY COMES

22   DOWN TO MR. WATSON'S STATE OF MIND.

23       AND PLAINTIFF HAS NOT GONE ANYWHERE NEAR STATING A CASE

24   FOR HIS SCIENTER UNDER THE PARTICULARITY STANDARDS, AND WE HAVE

25   MADE THAT ABUNDANTLY CLEAR IN OUR PAPERS.  BUT IN ADDITION,

1    THEY DO NOT HAVE A THEORY OF MOTIVE HERE, AND I BELIEVE THAT

2    THEY ARE NOT GOING TO BE ABLE TO EVEN OVERCOME THAT HURDLE IN A

3    NEW PLEADING.

4         THE COURT:  MOTIVE WOULD ONLY BE ONE ASPECT, I

5    CONSIDER A WHOLISTIC APPROACH.  I DON'T BELIEVE ABSENCE OF

6    MOTIVE ALONE CAN DEFEAT THE CLAIM, I THINK MR. PETERSEN DRAWS

7    THAT OUT IN HIS PAPERS.

8        BUT MR. SHAPIRO, I DO AGREE WITH YOU, I AM UNAWARE OF ANY

9    CASE THAT REQUIRES A COMPANY THAT TRUTHFULLY DISCLOSES THAT A

10   PARTICULAR POTENTIAL INVESTOR HAS WITHDRAWN, THAT THEY HAVE TO

11   GIVE THE REASONS FOR WITHDRAWING.

12       AND IT OPENS UP SUCH A PANDORA'S BOX THAT IT'S REALLY

13   CONCERNING TO ME, BECAUSE ONE, IT'S RARE YOU WOULD KNOW THE

14   REASON AN INVESTOR IS NOT INVESTING.  HERE, WE DO HAVE A PRETTY

15   DRAMATIC EVENT, AND IT MAY BE REASONABLE AT THE PLEADING STAGE

16   TO INFER, IT MAY BE PLAUSIBLE, I GUESS IS THE RIGHT WORD, TO

17   INFER THAT THE REASON WAS THIS BAZAAR CIRCUMSTANCE OF A CHARADE

18   BY MR. RAO.

19       BUT EVEN WITH THAT, I STILL DON'T KNOW -- MR. PETERSEN,

20   WILL HAVE TO TELL ME, OBVIOUSLY, YOU WEREN'T SHRINKING BACK ON

21   THIS, I'M VERY CONCERNED ABOUT CREEPING INTO AN OMISSIONS

22   THEORY WHEN TRUTHFUL INFORMATION IS GIVEN, TO HAVE TO THEN GIVE

23   THE REASONS YOU ARE GIVING THE TRUTHFUL INFORMATION.  THE

24   TRUTHFUL STATEMENT HERE BEING, GOLDMAN IS NO LONGER A POTENTIAL

25   INVESTOR.

1          MR. SHAPIRO:  CORRECT, YOUR HONOR.  I BELIEVE THAT'S

2     ABSOLUTELY CORRECT.

3          BUT I THINK THAT STATEMENT, IN AND OF ITSELF, IS NOT

4     ACTIONABLE HERE, BECAUSE WE ARE REALLY ONLY LOOKING AT THE

5     REPRESENTATIONS AND WARRANTIES IN THE STOCK PURCHASE AGREEMENT.

6          IF, ON THE OTHER HAND, WE HAD A PURE OMISSIONS CASE, THEN

7     MAYBE WE WOULD BE ADDRESSING THOSE CONSIDERATIONS, BUT WE

8     DON'T.

9          THE OTHER POINT I WOULD LIKE TO MAKE IS THAT AS THE COURT

10    POINTS OUT, THE STATEMENT THAT GOLDMAN WAS NOT INVESTING WAS A

11    TRUE STATEMENT, AND THAT IS IN FACT WHAT THE CASE WAS.

12         IN TERMS OF RELIANCE, THERE'S NO EVIDENCE THAT LIFELINE

13    EVER ASKED THE FOLLOWING QUESTION, AND WE POINT THAT OUT IN OUR

14    BRIEF THAT, CLEARLY, THE REASON BEHIND GOLDMAN'S WITHDRAWAL WAS

15    NOT OF MATERIAL RELEVANCE TO LIFELINE SUCH THAT IT INTENDED TO

16    ASK THAT QUESTION.

17         SO I WOULD ARGUE THAT UNDER A RELIANCE CONCEPT, THEY

18    HAVEN'T PROVED RELIANCE WITH RESPECT TO THAT PARTICULAR ISSUE.

19    BUT I THINK THE ORAL STATEMENTS ALL TOGETHER ARE OFF THE TABLE

20    BECAUSE OF THE INTEGRATION CLAUSE.

21         THE COURT:  THANK YOU.

22         I APPRECIATE THAT CLARIFICATION.  I MIXED THOSE TO TWO UP,

23    AND THAT'S HELPFUL TO ME.

24         MR. SHAPIRO:  THANK YOU, YOUR HONOR.

25         SO I THINK AGAIN, IF I COULD ADDRESS THE MOTIVE ISSUE, I

1    DO THINK YOUR HONOR IS CORRECT THAT MOTIVE IS ONE OF THE

2    FACTORS TO CONSIDER, BUT THE COURT AND THE NINTH CIRCUIT HAVE

3    BEEN VERY CLEAR THAT UNLESS YOU HAVE A COMPELLING CASE

4    DEMONSTRATING INTENT, THEN MOTIVE IS GOING TO BE REQUIRED AS

5    PART OF THE MIX.

6         AND PRODANOVA SAYS THAT VERY CLEARLY.  IN 2021, THE COURT

7    CAME DOWN WITH A VERY STRONG STATEMENT ON THAT POINT.  AND I

8    WOULD REFER THE COURT TO THAT DECISION.  AND THEREFORE, I DO

9    BELIEVE THAT THE MOTIVE PIECE IS GOING TO BE CRITICAL HERE AND

10   THAT THE THEORY THAT THEY HAVE PRESENTED GOES NOWHERE CLOSE TO

11   ESTABLISHING SUCH A MOTIVE.

12        IN FACT, WHAT THEY HAVE SAID IS EXACTLY WHAT THE

13   NINTH CIRCUIT HAS REJECTED AS MOTIVE, AS A PLAUSIBLE MOTIVE

14   THEORY, WHICH IS THAT, YOU KNOW, THE GENERAL CORPORATE BENEFIT,

15   WHICH MAY OR MAY NOT BE DOWN TO THE BENEFIT OF INDIVIDUAL

16   OFFICERS, IS ENOUGH TO ESTABLISH MOTIVE.

17        SO THAT'S THEIR ONLY THEORY.

18        THE COURT:  EVERY CORPORATE OFFICER WORKS FOR THE

19   COMPANY AND THE COMPANY, OR THE SHAREHOLDERS IN A PUBLIC

20   COMPANY, NEEDS TO MAKE MONEY.  SO --

21        MR. SHAPIRO:  YOUR HONOR, THE OTHER THING IS THAT,

22   AGAIN ON DAMAGES, THERE IS ABSOLUTELY NO EXPLANATION OF HOW

23   THEIR INVESTMENT HAS BEEN AFFECTED.

24        I KNOW THEY DON'T HAVE TO PLEAD DOLLARS AND CENTS, BUT

25   THEY DO HAVE TO JUST SHOW A QUANTIFIABLE LOSS, AND THAT HASN'T

1    BEEN DONE HERE.

2        FINALLY, I DO WANT TO POINT OUT THAT THERE ARE A LOT OF

3    CONCLUSORY STATEMENTS IN THE COMPLAINT REGARDING THIS INTERVIEW

4    THAT MR. WATSON GAVE, WHICH IS ACCESSIBLE ON THE INTERNET.

5        THE COURT:  I DON'T -- NO, YOU EITHER GIVE ME A

6    TRANSCRIPT OR IT DOESN'T -- YOU CITED IT TWICE, I DON'T THINK

7    YOU GAVE ME A LINK, BUT THAT GOES BEYOND THE PLEADING.

8        MR. SHAPIRO:  IT DOES, YOUR HONOR.

9        THE COURT:  I CAN'T DEAL WITH THAT NOW.

10       MR. SHAPIRO:  I AGREE WITH THAT.

11    BUT WHAT I'M TRYING TO SAY IS THAT THEY DRAW CERTAIN

12    CONCLUSIONS ABOUT WHAT WAS SAID IN THAT.  THOSE ARE SIMPLY

13    CONCLUSORY STATEMENTS, THEY DON'T POINT TO A SINGLE UTTERANCE

14    IN THAT INTERVIEW ON WHICH THEY ARE RELYING.  AND THAT'S WHAT

15    THEY WOULD HAVE TO DO UNDER A PARTICULARITY STANDARD.

16    SO I THINK FOR ALL INTENTS AND PURPOSES, THOSE ALLEGATIONS

17    ARE -- CANNOT BE RELIED ON BY THE COURT.  SO I JUST WANTED TO

18    MAKE THAT CLEAR AS WELL.

19    AND I THINK ON THE ISSUES OF LEAVE TO AMEND, THE COURT --

20    I UNDERSTAND THAT THE COURT RESPECTS THE LIBERALITY OF THE

21    RULE, AND THAT IT'S IN THE COURT'S DISCRETION TO GRANT THE

22    LEAVE, BUT AGAIN, AS WE HAVE POINTED OUT, THERE ARE JUST A

23    NUMBER OF HURDLES HERE THAT THEY HAVE NOT DEMONSTRATED ANY

24    ABILITY TO OVERCOME, THE LEAST OF WHICH IS THE ULTRAVIRUS

25    ISSUE, THE MOTIVE, AND SCIENTER ISSUES WE HAVE ADDRESSED, THE

1    DAMAGES ISSUE.

2         COUNSEL HAS HAD THE STOCK PURCHASE AGREEMENTS FROM DAY

3    ONE, AND YET IN THEIR OPPOSITION, THEY ARE STILL TRYING TO ADD

4    NEW ALLEGATIONS TO THEIR COMPLAINT, NONE OF WHICH ARE

5    COMPELLING ARGUMENTS.  AND THEY CLEARLY HAVE -- THEY HAVE

6    CLEARLY OVERSTATED THEIR CASE AT THE OUTSET, AND IT'S CLEAR NOW

7    THAT THEIR CASE HAS DRAMATICALLY NARROWED TO THE STOCK PURCHASE

8    AGREEMENTS THEMSELVES.

9         SO I THINK UNDER THESE CIRCUMSTANCES, I WOULD RESPECTFULLY

10   ARGUE THAT A MOTION FOR LEAVE TO AMEND SHOULD NOT BE GRANTED IN

11   THIS PARTICULAR INSTANCE.

12        THE COURT:  WELL, FIRST OF ALL, I THINK THAT THE --

13   IF I WERE TO AGREE WITH YOU, I THINK THAT MR. PETERSEN WOULD

14   PERSUADE THE NINTH CIRCUIT TO REVERSE ME IN ABOUT A NANOSECOND,

15   AND I WOULD PROBABLY GET A FRAGMENTED SENTENCE THAT REMANDED IT

16   TO ME TO GRANT LEAVE TO AMEND.  SO I'M NOT GOING TO DO THAT.  I

17   THINK THAT WE ALWAYS GIVE ONE OPPORTUNITY AFTER A MOTION TO

18   DISMISS.

19        BUT YOU KNOW, I THINK IT NEEDS TO BE DRAWN OUT UNDER

20   RULE 9(B), I AGREE WITH YOU MR. SHAPIRO.  BUT UNDER THE

21   RECISION UMBRELLA OF THEORY OF DAMAGES, IT MAY BE THAT THE

22   PLAINTIFF WANTS TO DRAW OUT A THEORY OF LIABILITY THAT HAD WE

23   KNOWN THAT MR. RAO WAS ENGAGING IN THIS CONDUCT THAT IS, AT

24   LEAST BAZAAR, IF NOT SOMETHING ELSE, AND HE IS A CO-FOUNDER AND

25   HIGH LEVEL OFFICER OF THIS COMPANY, THAT IT WOULD HAVE BEEN TOO

1   TUMULTUOUS FOR US TO INVEST.

2          SO IN AND OF ITSELF -- AND THEN IT HAS TO BE LINKED TO ONE

3   OF THE REPS AND WARRANTIES, I AGREE WITH YOU, BUT YOU SUGGEST

4   THAT IT WAS A SINGLE INCIDENT, AND THERE'S NOTHING IN THE

5   PLEADING THAT WOULD SUGGEST OTHERWISE, AND THAT THERE WERE SOME

6   OTHER REASONS OTHER THAN FRAUD, YOU DON'T ELABORATE ON, FOR

7   THAT INCIDENT TO HAVE OCCURRED.

8          BUT THAT JUST OPENS THE DOOR, PERHAPS, TO ANOTHER THEORY

9   OF THE NEED FOR A CORPORATION TO DISCLOSE WHEN ONE OF ITS

10  SIGNIFICANT OFFICERS HAS A DISABILITY OF SOME SORT THAT COULD

11  INTERFERE WITH THE ABILITY OF THE COMPANY.

12         SO I DON'T KNOW, YOU KNOW, THAT GOES TO THE RECISION

13  THEORY.  I DON'T -- IT'S NOT CLEAR TO ME WHETHER MR.

14  PETERSEN -- WHETHER THAT'S PART OF WHAT HE'S SAYING.  I DON'T

15  KNOW, BUT I HAVE TO SEE.  HE WILL LET ME KNOW.  SO I THINK I

16  HAVE TO GIVE LEAVE IT AMEND.

17             MR. SHAPIRO:  I APPRECIATE THAT, YOUR HONOR.

18         BUT LET ME JUST ADDRESS THE POINT THAT YOU JUST MADE, IF I

19   MAY.  EVEN UNDER RECISION THEORY, THEY WOULD HAVE TO PROVE

20   AFFIRMATIVE FALSITY AND SCIENTER.  SO THOSE TWO ELEMENTS ARE

21   STILL IN THE CASE, EVEN UNDER RECISION APPROACH.

22         AND THE MISREPRESENTATION, AS THE COURT POINTED OUT AT THE

23  OUTSET, HAS TO BE THAT THERE WAS A VIOLATION OF LAW BY THE

24  COMPANY.

25             THE COURT:  RIGHT.  THAT'S ALL THAT'S PLED, YEAH.

1          MR. SHAPIRO:  THE CASE LAW, IN PARTICULAR THE HEWLETT

2     PACKARD CASE WE CITE AND THE CT PARTNERS CASE, DEMONSTRATE THAT

3     MISCONDUCT BY EVEN THE MOST SENIOR OFFICERS IN A COMPANY, DOES

4     NOT NECESSARILY MEAN THAT THERE'S A MATERIAL MISREPRESENTATION.

5          THE COURT:  RIGHT.

6          MR. SHAPIRO:  THERE CAN BE SCANDALS AND MISCONDUCT AT

7     THE HIGHEST LEVELS OF A CORPORATION WITHOUT THERE BEING

8     SECURITIES FRAUD.  SO I THINK THOSE CASES STAND FOR THAT

9     PROPOSITION VERY CLEARLY.

10         THE COURT:  SURE.

11         MR. SHAPIRO:  AND I THINK THAT'S WORTH MENTIONING

12    ALSO THAT EVEN IF -- AND THE CT PARTNERS CASE GOES INTO THIS AT

13    SOME LENGTH, THAT EVEN IF INFORMATION MIGHT BE CONSIDERED

14    IMPORTANT TO AN INVESTOR, IT DOES NOT NECESSARILY MEAN THAT

15    IT'S MATERIAL, AND THEREFORE REQUIRED TO BE DISCLOSED UNDER THE

16    SECURITIES LAWS.

17         SO UNDOUBTEDLY, LIFELINE IS GOING TO ARGUE, WE WOULD HAVE

18    LIKED TO HAD KNOWN THIS, BUT THAT'S NOT GOOD ENOUGH.  AND

19    THAT'S JUST NOT THE STANDARD UNDER THE SECURITIES LAW.

20         MOREOVER, AS WE POINTED OUT IN OUR BRIEF, THEY

21    THEORETICALLY HAD THE OPPORTUNITY TO ASK FOR THE REASONS WHY

22    GOLDMAN HAD NOT INVESTED, AND THEY DIDN'T CHOOSE TO GO THERE.

23         SO I THINK IN TERMS OF RELIANCE, THAT'S A SIGNIFICANT

24    PIECE OF INFORMATION.  AND THEY HAVE NOT CLOSED THE LOOP ON

25    THAT.

1    SO I JUST WANT TO MAKE THAT CLEAR TO THE COURT.  AND WE

2    HAVE THOSE BRIEFS CITED IN OUR MOTION PAPERS, AND I THINK THEY

3    ARE COMPELLING AUTHORITY ON THOSE POINTS.

4         THE COURT:  OKAY.  ALL RIGHT.

5    LET ME TURN THEN TO YOUR COLLEAGUES.  MS. WEST, ANYTHING

6    YOU WOULD LIKE TO ADD FOR MR. WATSON?

7         MS. WEST:  I THINK MR. SHAPIRO ABLY ARGUED THAT, AND

8    THERE'S NOTHING THAT I NEED TO ADD ON BEHALF OF MR. WATSON.

9    THANK YOU.

10        THE COURT:  OKAY.  AND MR. GUGELMANN, ANYTHING ELSE

11   FOR MR. RAO?

12        MR. GUGELMANN:  I ECHO MS. WEST, I DON'T THINK I HAVE

13   ANYTHING TO ADD TO WHAT MR. SHAPIRO HAS PRESENTED ALREADY.

14   THANK YOU.

15        THE COURT:  GOOD.  THANK YOU.

16   ALL RIGHT.  THEN MR. PETERSEN, LET ME TURN TO YOU FOR

17   ARGUMENT THAT YOU HAVE, RECOGNIZING I AM GOING TO GIVE YOU

18   LEAVE TO AMEND, SO YOU DON'T NEED TO ARGUE THAT PART OF IT.

19        MR. PETERSEN:  THANK YOU, YOUR HONOR.

20   AND I DO APPRECIATE THE OPPORTUNITY TO AMEND, AND I THINK

21   THE FOCUS HERE, AND I GET WHY, BECAUSE OF THE WAY THAT IT'S

22   CURRENTLY PLED, IS THAT THERE IS A VIOLATION OF LAW.

23   WHEN THE REPRESENTATIONS IN THE SPA, THE STOCK PURCHASE

24   AGREEMENTS, ARE EXAMINED, 3.6, 3.11, 3.12, IT GOES BEYOND THAT.

25   AND SO THE AMENDED COMPLAINT WILL MAKE CLEAR WITH RESPECT TO

1        THE ALLEGATIONS OF WHY THE OMISSION MADE CERTAIN

2    REPRESENTATIONS IN THE SPA'S, SPECIFICALLY THOSE SECTIONS AND

3    OTHERS, OF FALSE OR MISLEADING AT THAT POINT.

4        SO I DO APPRECIATE THE OPPORTUNITY FOR LEAVE TO AMEND.

5    AND UNLESS THE COURT HAS ANY OTHER SPECIFIC QUESTIONS, SINCE

6    THIS PLEADING IS GOING TO BE SUPERSEDED, WE WILL MAKE SURE TO

7    ADDRESS THE COURT'S POINTS ON THOSE ISSUES.

8        THE COURT:  LET ME JUST ASK A QUESTION BECAUSE THEN I

9    CAN PUT IT TO REST.  I WOULD LIKE TO BE ABLE TO GRANT THE

10   MOTION WITHOUT LEAVE TO AMEND ON THE BREACH OF FIDUCIARIES

11   DUTIES THEORY, AND I WOULD LIKE TO BE ABLE TO GRANT THE MOTION

12   TO DISMISS ON THE THEORY OF ORAL REPRESENTATIONS MADE BEFORE

13   THE STOCK PURCHASE AGREEMENT WAS SIGNED.  IS THAT -- THOSE WILL

14   BE WITHDRAWN?

15       MR. PETERSEN:  THOSE WILL BE WITHDRAWN, YOUR HONOR.

16   THIS IS A CASE ABOUT THE FAILURE TO DISCLOSE THE CONDUCT

17   THAT RENDERED REPRESENTATIONS IN THE ACTUAL DOCUMENT ITSELF.

18   THE STOCK PURCHASE AGREEMENTS, MISLEADING OR FALSE.

19       THE COURT:  OKAY.  IT'S ALWAYS NICE TO GIVE THE

20   DEFENDANTS THE SURETY THAT THEY DON'T HAVE TO KEEP ARGUING THAT

21   IN CASE IT LOOKS LIKE IT MIGHT STILL BE THERE.

22       OKAY.  SO MR. PETERSEN, AS I SAID, YOU ALL ARE THE EXPERTS

23   IN THE FIELD, ANYTHING I COULD WRITE IN AN ORDER WOULD JUST BE

24   A SUMMARY OF WHAT YOU'VE TAUGHT ME AND WHAT I'VE LEARNED FROM

25   OTHER SECURITIES LAWYERS.

1    SO I'M GOING TO ISSUE A FAIRLY HIGH LEVEL ORDER, BECAUSE I

2    THINK YOU UNDERSTAND WHAT NEEDS TO BE DONE.  WITH THAT IN MIND,

3    FROM -- IT'S NOT THAT IT WILL BE THIS AFTERNOON, BUT FROM THE

4    DATE YOU GET MY ORDER, I WANT TO GIVE YOU ENOUGH TIME THAT YOU

5    CAN REALLY GIVE ME YOUR NEXT BEST PLEADING, AND SO I'M NOT

6    PUTTING LIMITS ON YOU, I WANT YOU TO BE HONEST WITH ME, IF IT'S

7    OUTRAGEOUS, MR. SHAPIRO WILL LET ME KNOW, BUT HOW MUCH TIME

8    WOULD YOU LIKE TO AMEND?

9         MR. PETERSEN:  YOUR HONOR, JUST FROM A PERSONAL

10   STANDPOINT, I HAVE TRIALS BACK-TO-BACK IN MAY, SO I WOULD

11   PREFER 45 DAYS, IF POSSIBLE.  WE WILL TRY TO GET IT DONE AS

12   SOON AS POSSIBLE, BUT 45 DAYS, TO BE SAFE, WOULD BE

13   APPRECIATED.

14        THE COURT:  MR. SHAPIRO, ANY OBJECTION TO THAT?

15        MR. SHAPIRO:  NO OBJECTION, YOUR HONOR.

16        THE COURT:  MR. GUGELMANN, MS. WEST?

17        MS. WEST:  NO OBJECTION.  THANK YOU.

18        MR. GUGELMANN:  NONE FROM MR. RILEY EITHER.

19        THE COURT:  GOOD.  THAT'S GREAT.  AND IT WILL BE FROM

20   THE DATE I ISSUE THE ORDER, SO IT WILL CLEARLY BE MORE THAN THE

21   45 DAYS.  I TOO AM GOING INTO TRIAL FOR A LENGTHY PERIOD OF

22   TIME, I'M SYMPATHETIC.

23        AND ONCE YOU GET THE AMENDED PLEADING, IT'S NOT UNTYPICAL

24   THAT THE PARTIES AGREE TO GIVE THE DEFENDANTS A LITTLE MORE

25   TIME TO FILE THEIR RESPONSE.  SO JUST SEND ME A STIPULATION.

1          YOU KNOW HOW LONG IT TAKES TO GET A MOTION ON CALENDAR,

2     THAT GIVES PLENTY OF TIME FOR THE OPPOSITION AND REPLY.  YOU

3     CAN WORK OUT BRIEFING WITHIN THAT SCHEDULE, BUT I'M MORE THAN

4     GLAD TO ACCOMMODATE THE DEFENDANT'S NEED FOR A LITTLE MORE TIME

5     TO PUT TOGETHER THEIR SUBSEQUENT MOTION TO DISMISS, WHICH I

6     KNOW WILL BE COMING, I WOULD BE DISAPPOINTED IF IT WEREN'T.

7          AND YOU KNOW, IT'S THE VERY RARE CASE THAT I GIVE YET

8     ANOTHER OPPORTUNITY TO AMEND.  I HAVE DONE IT, I HAVE, AND

9     BECAUSE THE RULES ARE THE RULES, BUT I THINK WE ALL UNDERSTAND

10    THIS NEXT TIME AROUND IS DO-OR-DIE, SO I WANT TO MAKE SURE

11    EVERYONE HAS THE TIME THAT YOU NEED.

12         ALL RIGHT.  THANK YOU VERY MUCH.  I WILL LOOK FORWARD TO

13    SEEING THE AMENDED PLEADING.  AND I THINK THAT TAKES CARE OF

14    EVERYTHING THEN.

15              MR. PETERSEN:  THANK YOU, YOUR HONOR.

16              MR. SHAPIRO:  THANK YOU, YOUR HONOR.

17              MS. WEST:  THANK YOU, YOUR HONOR.

18         (THE PROCEEDINGS WERE CONCLUDED AT 9:26 A.M.)

19

20

21

22

23

24

25

1

2

3

4                          **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____
      SUMMER A. FISHER, CSR, CRR
25    CERTIFICATE NUMBER 13185          DATED: 5/5/22