UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFELINE LEGACY HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>OZY MEDIA, INC., SAMIR RAO, and CARLOS WATSON,<br><br>Defendants. | Case No. 21-cv-07751-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 31] |

Plaintiff LifeLine Legacy Holdings, LLC sues Defendants OZY Media, Inc., Samir Rao, and Carlos Watson for securities fraud under federal and state laws. OZY Media has filed a motion to dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6), which is joined by Rao and Watson.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

I.   **BACKGROUND**[1]

OZY Media is a digital media company specializing in news, podcasts, television, and film. FAC ¶ 13, ECF 18. The company was founded by Rao and Watson in 2013. *Id*. Rao is the Chief Operating Officer, Watson is the Chief Executive Officer, and both serve on the company's Board of Directors. *Id*. ¶¶ 11-13.

Rao and Watson solicited LifeLine to invest in OZY Media. FAC ¶ 14. In February 2021, they reached out to LifeLine via telephone and electronic correspondence, touting OZY Media's

---

[1] LifeLine's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

1  financial performance and claiming interest from large institutional investors such as Goldman
2  Sachs. *Id*. On February 15, 2021, Watson informed LifeLine that Goldman Sachs had declined to
3  invest, but stated that other institutional investors were interested. *Id*. LifeLine entered into a
4  Stock Purchase Agreement ("SPA") with OZY Media on February 24, 2021, for the purchase of
5  approximately $2 million of Series C Preferred Shares. *Id*. ¶ 15. In April and May 2021, Rao and
6  Watson solicited further investments from LifeLine, making oral and written representations that a
7  Google affiliate was leading the Series D financing by investing approximately $30 million in
8  OZY Media. *Id*. ¶ 18. LifeLine entered into a second SPA with OZY Media on May 13, 2021, for
9  the purchase of approximately $250,000 of Series D Preferred Shares. *Id*. ¶¶ 15-19.

LifeLine claims that Defendants failed to disclose material information regarding OZY Media prior to execution of the SPAs. FAC ¶¶ 6, 22-26. Specifically, LifeLine alleges that, "At no time prior to LifeLine's execution of the Series C and Series D SPAs did Defendants disclose to LifeLine that Rao attempted to impersonate an executive of YouTube in an effort to obtain a substantial investment from Goldman Sachs, or that, as a result of Rao's fraudulent conduct, Goldman Sachs declined to invest in Ozy Media and that Ozy Media was under investigation by government agencies." *Id*. ¶ 24. Rao's actions became publicly known in September 2021. *Id*. ¶ 26. OZY Media's Board of Directors initially decided to wind down the company's affairs, but Watson subsequently announced that the company would continue operations. *Id*.

LifeLine filed this suit against Ozy Media and Rao on October 4, 2021, and thereafter amended as of right to add Watson as a defendant. *See* Compl., ECF 1; FAC, ECF 18. The FAC asserts the following claims: (1) violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 against OZY Media; (2) violations of § 10(b) of the Exchange Act and Rule 10b-5 against Rao; (3) violations of § 10(b) of the Exchange Act and Rule 10b-5 against Watson; (4) violations of California Corporations Code § 25401 against OZY Media; (5) violations of California Corporations Code § 25401 against Rao; (6) violations of California Corporations Code § 25401 against Watson; and (7) fraud by concealment against all Defendants. LifeLine seeks rescission of the SPAs and damages. FAC ¶¶ 8, 32, 49.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court is limited to consideration of the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

## III. DISCUSSION

Defendants assert that LifeLine's federal securities claims are not adequately pled, and that because the federal securities claims fail, so too do the state law claims based on the same allegations. In opposition, LifeLine contends that its claims are adequately pled. The Court first discusses the federal securities claims, and then it takes up the state law claims.

### A. Federal Claims

Claims 1, 2, and 3 are asserted under § 10(b) of the Exchange Act and Rule 10b-5. Claim 1 is asserted against OZY Media, Claim 2 is asserted against Rao, and Claim 3 is asserted against Watson. The elements of a claim under § 10(b) and Rule 10b-5 are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2 F.4th 1199, 1203 (9th Cir. 2021) (internal quotation marks and citation omitted). "If one of these elements is missing, the claim fails." *Id.*

3

Defendants contend that LifeLine has not alleged a material misrepresentation or omission, scienter, reliance, economic loss, or loss causation. LifeLine asserts that these elements are adequately alleged.

### 1. Material Misrepresentation or Omission

The FAC alleges that Rao and Watson made several oral representations to LifeLine regarding OZY Media, and the § 10(b) claims appear to be based at least in part on those oral representations. FAC ¶¶ 14, 18, 30, 36, 42. However, LifeLine's counsel clarified at the hearing that the § 10(b) claims are not based on any oral representations, but instead are based on alleged material omissions. *See* Hrg. Tr. 17:8-18, ECF 55.

Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). "The person who omitted the material information must have had a duty to disclose it to the person supposedly harmed by the omission." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009). "Such a duty may arise from a relationship of trust and confidence between parties to a transaction." *Id*. (internal quotation marks and citation omitted). Alternatively, disclosure is required "when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx*, 563 U.S. at 44 (internal quotation marks and citation omitted).

Claim 7 of the FAC, for fraud by concealment under state law, alleges that "a fiduciary and confidential relationship existed between Defendants, and each of them, and Plaintiff." FAC ¶ 61. That allegation does not appear in Claims 1-3 for federal securities fraud. LifeLine's counsel stated at the hearing that its claims are not premised on an alleged fiduciary relationship, and that the allegations of breach of fiduciary duty "will be withdrawn." Hrg. Tr. 17:8-18. Counsel stated that "this is a case about the failure to disclose the conduct that rendered representations in the actual document itself[,] the Stock Purchase Agreements, misleading or false." *Id*. The Court therefore focuses on the representations and warranties of the SPAs in evaluating the adequacy of LifeLine's claims. The Court understands LifeLine to be withdrawing its fiduciary duty theory as to all claims, including Claim 7 for fraud by concealment.

4

The FAC identifies only one representation and warranty that is set forth in the SPAs: "to the Company's knowledge, the Company is not in violation of any federal or state statute, rule or regulation applicable to the Company." FAC ¶¶ 16, 20. LifeLine does not explain how this statement was rendered false or misleading by Defendants' failure to disclose the Rao impersonation and resulting government investigations. LifeLine does not identify any statute, rule, or regulation that was violated by Rao's impersonation of a YouTube executive. Nor has LifeLine tied the alleged failure to disclose government investigations to the alleged representation and warranty. LifeLine must clearly connect the alleged nondisclosure of investigations to the specific statement allegedly rendered false or misleading by that nondisclosure. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008) (falsity not sufficiently pled where "the TAC's connection between the falsity of these statements and the regulatory investigations is extraordinarily vague").

In its opposition to the motion, LifeLine identifies *other* representations and warranties in the SPAs that LifeLine contends were rendered false or misleading by Defendants' failure to disclose. When evaluating a Rule 12(b)(6) motion, the Court cannot consider representations and warranties that are not alleged in the FAC.

As currently framed, Claims 1, 2, and 3 are subject to dismissal for failure to allege an actionable omission.

### 2. Scienter

"[T]o adequately plead scienter, a complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) (internal quotation marks and citation omitted). Where the plaintiff claims that the defendant omitted material facts necessary to make a statement not misleading, the court "must first determine who was the maker of the statement for purposes of Section 10(b) and Rule 10b-5(b) and whether the complaint adequately alleged that the maker omitted material information knowingly, intentionally, or with deliberate recklessness." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 705 (9th Cir. 2021).

LifeLine's theory is that Defendants failed to disclose material facts – the Rao

impersonation and government investigations – that were necessary to make certain representations of the SPAs not misleading. The FAC refers to only one such representation: "to the Company's knowledge, the Company is not in violation of any federal or state statute, rule or regulation applicable to the Company." FAC ¶¶ 16, 20. Thus, the Court's scienter inquiry is limited to identifying the maker of that statement and determining whether the FAC adequately alleges that the maker "omitted material information knowingly, intentionally, or with deliberate recklessness." *In re Alphabet*, 1 F.4th at 705.

LifeLine has not alleged who signed the SPAs, and has not attached them to the FAC. Defendants have submitted the SPAs, however, and the Court may consider them under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The SPAs were signed by Watson as CEO of OZY Media. *See* Eidelman Decl. Exhs. B, C, ECF 33. Accordingly, both Watson and OZY Media may be considered makers of the statement at issue. *See In re Alphabet*, 1 F.4th at 705.

The FAC alleges that Watson knew about the Rao impersonation as of February 2, 2021 – a date prior to execution of the SPAs – but the FAC does not allege that Watson knew Rao's conduct violated a statute, rule, or regulation applicable to the company. FAC ¶ 22. In fact, as discussed above in section III.A.1., the FAC does not even allege that Rao' conduct *did* violate a statute, rule, or regulation. Moreover, while the FAC alleges that Watson knew "that government agency investigations of the company's and Rao's actions had been initiated," the FAC does not say when Watson became aware those investigations. *Id*. Finally, knowledge of investigations does not equate to knowledge that a statute, rule, or regulation has been violated. Consequently, LifeLine's allegations are insufficient to show that Watson acted with the requisite scienter.

As to OZY Media, the scienter of its senior controlling officers may be attributed to it. *See In re Alphabet*, 1 F.4th at 705. Scienter is not adequately alleged as to Watson for the reasons discussed above. Nor is scienter adequately alleged as to Rao. While Rao clearly knew about his own impersonation of a YouTube executive, the FAC does not allege facts showing that Rao knew that his conduct violated a statute, rule or regulation. Accordingly, LifeLine's allegations are insufficient to show the requisite scienter as to OZY Media.

LifeLine argues that scienter is established by the FAC's allegations that Watson and Rao had actual knowledge of Rao impersonation. The flaw in LifeLine's argument is that it is not tethered to the specific representation of the SPAs that LifeLine claims gave rise to a duty to disclose. See *In re Alphabet*, 1 F.4th at 705 (scienter inquiry must focus on the statement that was made and allegedly rendered false or misleading by omissions).

Defendants contend that there is an additional deficiency in LifeLine's scienter allegations, namely, the failure to plead a plausible motive for the alleged material omissions. In the Ninth Circuit, allegation of a plausible motive generally is required to plead scienter. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106-08 (9th Cir. 2021). "[A] complaint lacking a plausible motive allegation may still meet its burden of pleading a strong inference of scienter." *Id*. at 1108. "But the lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter." *Id*. The Ninth Circuit has stated that "[o]nly where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will we overlook the failure to allege a plausible motive." *Id*. The FAC does not use the word "motive." In their opposition, LifeLine argues that the FAC discloses a pecuniary motive for not disclosing Rao's misconduct, that is, the desire to obtain financing from LifeLine. *See* Opp. at 13, ECF 37. "[A]llegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). LifeLine's failure to allege a plausible motive under Ninth Circuit standards is an additional basis for finding the scienter allegations to be inadequate.

Claims 1, 2, and 3 are subject to dismissal for failure to allege scienter with adequate particularity.

### 3. Reliance

"Reliance establishes the causal connection between the alleged fraud and the securities transaction." *Desai*, 573 F.3d at 939. "To say that a plaintiff relied on a defendant's bad act is to say that the defendant's actions played a substantial part in the plaintiff's investment decision."

7

*Id*. (internal quotation marks and citation omitted). Reliance may be presumed in certain limited circumstances. *See In re Volkswagen*, 2 F.4th at 1203-04. Pursuant to the Supreme Court's decision in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), the Ninth Circuit has "recognized the presumption of reliance is generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact." *In re Volkswagen*, 2 F.4th at 1204. However, "the *Affiliated Ute* presumption is limited to cases that primarily allege omissions and present plaintiffs with the difficult task of proving a speculative negative." *Id*. (internal quotation marks and citation omitted). Such "pure omissions" cases are distinguishable from "mixed" cases involving both omissions and affirmative misrepresentations. *See id.* The district court must "analytically characterize" the case before it "as either primarily a nondisclosure case (which would make the presumption applicable), or a positive misrepresentation case (where the presumption would be unavailable)." *Id*. at 1204-05 (internal quotation marks and citation omitted).

LifeLine asserts that this is an omissions case, and therefore that it is entitled to a presumption of reliance. Defendants contend that this is a mixed case, involving both alleged omissions and misrepresentations, and therefore that the presumption does not apply. The Court agrees with Defendants. LifeLine's theory is that certain representations and warranties in the SPAs were false or misleading because Defendants failed to disclose the Rao impersonation and the government investigations. Based on LifeLine's framing of its claims, the Court finds that LifeLine must allege facts showing that it relied on the false or misleading representations in the SPAs when making its investment decision. LifeLine has not alleged facts showing that it relied on the sole representation of the SPAs identified in the complaint – that the Company was not in violation of any statute, rule or regulation – in deciding to invest in OZY Media.

Claims 1, 2, and 3 are subject to dismissal for failure to allege reliance.

### 4. Economic Loss / Loss Causation

"The causation requirement for Rule 10b-5 actions includes both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentation or omissions caused the harm." *Livid Holdings Ltd. v. Salomon Smith*

8

*Barney, Inc.*, 416 F.3d 940, 949 (9th Cir. 2005) (internal quotation marks and citation omitted).

In the present case, LifeLine alleges that had it known about the Rao impersonation, "it would never have invested in Ozy Media and LifeLine is now, therefore, entitled to rescission of its investments and/or damages all as provided under applicable law." FAC ¶ 8. With respect to damages, LifeLine alleges that "Rao's fraudulent conduct, once disclosed resulted in damage to the value of Ozy Media and, as a result, Plaintiff has incurred damage in an amount according to proof at trial, but not less than the difference between the amount paid by Plaintiff for the shares in Ozy Media and the value of the shares following the disclosure of Rao's fraudulent conduct, plus interest thereon." FAC ¶ 38.

Defendants argue that these allegations are insufficient to show that LifeLine suffered economic loss caused by Defendants' conduct. LifeLine argues that its allegations are sufficient, relying on *Livid Holdings*, in which the plaintiff alleged that it would not have purchased stock in a privately held company but for the concealment of the company's dire financial situation. *See Livid Holdings*, 416 F.3d at 949. The company eventually went bankrupt, causing the plaintiff to lose the entire value of its investment. *See id.* The Ninth Circuit found the plaintiffs' allegations sufficient to withstand a Rule 12(b)(6) motion. *See id. Livid Holdings* is distinguishable from the present case, because the plaintiff in *Livid Holdings* identified specific economic loss caused by the defendants' conduct – loss of the plaintiff's investment. Here, LifeLine has not alleged facts showing similar loss or even that the value of its shares has decreased.

Lifeline also relies on *WPP Lux*, in which the plaintiff alleged that it bought shares in a privately held company while the company's founders secretly were selling their own shares. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1054 (9th Cir. 2011), *abrogated by Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094 (2019). The plaintiff alleged that when the company revealed that its founders had engaged in this "pump and dump" scheme, the plaintiff's shares in the company immediately became worthless, as no investor would buy them under those circumstances. *See id.* The Ninth Circuit found these allegations to be adequate, holding that "[a]though these allegations do not provide detailed share prices, the number of shares currently held, or whether attempts to sell the Spot Runner shares were made, the amended

9

complaint includes a statement of loss causation sufficient to provide some assurance that the theory has a basis in fact." *Id*. In contrast, LifeLine has not alleged facts showing that its conclusory allegation of economic loss has a basis in fact.

While LifeLine need not allege a great amount of factual detail, it must allege facts sufficient to provide some assurance that it suffered economic loss as a result of Defendants' alleged material omissions.

Claims 1, 2, and 3 are subject to dismissal for failure to allege economic loss and loss causation.

### 5. Conclusion Re Federal Claims

For the reasons discussed above, Defendants' motion to dismiss is GRANTED as to Claims 1-3, WITH LEAVE TO AMEND to the extent the claims are based on the theory that the alleged omissions rendered false and misleading representations and warranties in the SPAs, and WITHOUT LEAVE TO AMEND to the extent the claims are based on oral representations or an alleged fiduciary duty.

### B. State Law Claims

Claims 4, 5, and 6 are asserted under California Corporations Code § 25401, and Claim 7 is for fraud by concealment under California common law. Defendants argue that because these state law claims merely repackage LifeLine's federal securities claims, dismissal of the federal securities claims warrants dismissal of the state law claims as well. Defendants' argument is supported by decisions from district courts within the Ninth Circuit. *See, e.g., Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1252 (N.D. Cal. 2014) ("The Court agrees with Defendants that Plaintiff's inability to state a claim for fraud under Section 10b-5 is also fatal to his § 25401 claims."); *Wallack v. Idexx Lab'ys, Inc.*, No. 11CV2996-GPC KSC, 2013 WL 5206190, at *12 (S.D. Cal. Sept. 12, 2013) (finding dismissal of state securities claims and fraud claims warranted following dismissal of federal securities claims).

Accordingly, Defendants' motion to dismiss is GRANTED as to Claims 4-7, WITH LEAVE TO AMEND to the extent the claims are based on the theory that the alleged omissions rendered false and misleading representations and warranties in the SPAs, and WITHOUT

10

1   LEAVE TO AMEND to the extent the claims are based on oral representations or an alleged
2   fiduciary duty.

### IV. ORDER

(1) The motion to dismiss is GRANTED, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART, as stated herein;

(2) Any amended pleading shall be filed by July 29, 2022.  Leave to amend is limited to the defects identified in this order.  LifeLine may not add new claims or parties absent express leave of the Court.

(3) This order terminates ECF 31.

Dated:  June 13, 2022

_____
BETH LABSON FREEMAN
United States District Judge